## 12640. JOHNSON *v.* THE STATE.

BROYLES, C. J. 1. Conceding, but not deciding, that the admission of the alleged dying declarations of the deceased was error, it was not error requiring a new trial, since if the jury had believed the declarations the only possible legal finding would have been a verdict of murder, and they convicted the defendant of voluntary manslaughter. See, in this connection, *Pyle* v. *State*, 4 *Ga. App.* 817, 818 (62 S. E. 540).

2. Under the foregoing ruling, it is unnecessary to pass upon the assignment of error upon the charge of the court as to dying declarations.

3. A ground of the motion for a new trial complains that the court erred in instructing the jury upon the subject of murder. The defendant having been convicted of manslaughter, and not of murder, will not be heard to complain of alleged errors of the court in charging the law of murder. *Thompson* v. *State*, 24 *Ga. App.* 144 (2) (99 S. E. 891), and citations.

4. The complaint made in another ground of the motion for a new trial, that the judge in his charge failed to state fully and clearly the contentions of the defendant, is without merit. Conceding that the contentions of the State were stated more at length than those of the defendant, " it ,is well settled that the mere fact that contentions of one side are stated more at length than those of the other does not show that undue stress was laid upon or undue prominence given to the contentions so stated." *Smith* v. *State*, 24 *Ga. App.* 654 (2 *a*) (101 S. E. 764), and cit.

5. The evidence, with the dying declarations of the deceased excluded, and the defendant's statement to the jury, authorized the verdict of voluntary manslaughter, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Bloodworth, J., concurs.*

LUKE, J., dissenting. I am of the opinion that the admission of the alleged dying declarations was harmful error. Such declarations, in my opinion, were calculated to, and did, influence the jury.

DECIDED NOVEMBER 18, 1921.

Indictment for murder; from McDuffie superior court — Judge Henry C. Hammond. June 8, 1921.

Charlie Smith was shot by Olin Johnson with a pistol, in the morning, before sunrise, the ball entering his left side and passing out under the breast bone, and he died within the next forty-eight hours. From the evidence it appears that after he had been examined by physicians on the morning of the shooting, he made declarations to them in regard to it, and that later, about ten o'clock the same morning, he made declarations to Charles Langham on the same subject, and that in the interview with the physicians, in which the first declarations were made, he said that he was going to get well. The next day he told his mother he could not live. Dr. Gibson testified: that after he and Dr. Riley had examined Smith and decided that he would die, Dr. Riley told Smith that he had better make ready to meet his God, that the chances were all against him, and the probability was that he was going to die, and if he had any arrangements to make, he had better make them, that Smith said his wife understood his business, that he had talked it over with her and had it arranged; he said also, " You think I am going to die, but I am going to get well;" the witness did not remember in what part of the conversation this was said, whether " at the beginning or along in the middle as they were talking;" it was in the conversation which followed the consultation of the physicians as to his condition. Dr. Gibson testified that after Smith was told that he was going to die, " he only said, in reference to how he came to get shot, that he got out of his crib; said he had some corn in his hands — two ears of corn, and was going to feed his chickens, and said Mr. Johnson came out of the crib behind him and told him, ' Now I will fix you,'· and shot. I don't think he said anything more about it, except just that way. I don't recollect whether he said he had given him any cause to shoot him at all."

Langham testified: that when he saw Smith, after the doctors had left, Smith " didn't say anything about whether he was dying or whether he thought he was going to die or not. . . He

said he was shot bad. When he was in bed there, shot through and through, . . he said that he got up on Monday morning between daylight and sunup, and went out and fed his mules, and got two ears of corn, going back for his wife to feed the chickens, and said this boy Olin came in the back gate when he was somewhere near the crib door, . . and he commenced cursing him and said he was ready to settle that cow scrape that morning, and he told the boy there was no use in that; he . . said the boy let in to curse him, said he cursed him for a son of a bitch and hit at him, and said he knocked the lick off; the boy didn't hit him; said the boy stepped back then and threw his hand in his pocket and he didn't think the boy was going to shoot him, because he didn't have any pistol of his own; . . said he pulled the pistol out and · shot him, and said then he turned and walked off and left the boy standing there."

The charge of the court as to dying declarations was as follows: " Certain testimony has been admitted for your consideration, known to the law as dying declarations. Those declarations are not made under oath and are admitted to the jury on the theory that the person who made them, the deceased in this case, was apprehensive, was convinced, that his immediate dissolution was pending, that he was going to die; and only under those circumstances can they be received. While they have been admitted to you in evidence, still it is for you to say whether the deceased was in that condition of mind; and if he was, you should accept them, giving them such weight as you think them entitled to. If not, you should reject them entirely."

The dying declarations were admitted in evidence over the objection that it had not been shown that at the time of making them the declarant realized or believed that he was dying or going to die. The charge of the court as to dying declarations was complained of on the ground that the court failed to charge that such declarations should be received with great caution, and that the bias, feeling, and physical and mental condition of the declarant, as well as the credibility of the alleged declarations, should be weighed by the jury.

*J. B. Burnside, John T. West & Son,* for plaintiff in error, cited: 79 *Ga.* 87 (3); 130 *Ga.* 361 (2); Penal Code (1910), § 1026; 12 *Ga. App.* 111 (2); 2 *Ga. App.* 184.

*A. L. Franklin, solicitor-general, John M. Graham,* contra, cited: Penal Code (1910), § 1026; 4 *Ga. App.* 811 (5), 817, 818; 23 *Ga. App.* 77 (3, 4); 11 *Ga. App.* 419 (1), 420; 150 *Ga.* 775, and cit.; 1 *Ga. App.* 773 (6); 18 *Ga. App.* 782; 17 *Ga. App.* 751 (3); 24 *Ga. App.* 144 (2), and cit.; 25 *Ga. App.* 756; 24 *Ga. App.* 654 (2 a).