## CAMPBELL v. THE STATE.

1. Where letters have been lost or destroyed, their contents, if material, may be proved by a witness who testifies that he read them and knows the substance of them, although he can not state what they contained "word for word."

2. Where a wife has been indicted for the murder of her husband, on the trial it is competent to prove declarations or acts on her part near the time of the alleged homicide, tending to show ill will or malice on her part toward him, or to prove a line of conduct or gross ill treatment and cruelty on her part toward him, continuing until shortly before the alleged offense. Such evidence is admissible for the purpose of showing motive or malice on the part of the accused, and to rebut the presumed improbability of a wife murdering her husband.

3. Immaterial errors which could not have injured the defendant furnish no ground for a new trial.

4. On the trial of a criminal case, although a witness for the State on direct examination testified that he received and saw certain letters written by the defendant, yet where on cross-examination he stated that he did not know that the defendant wrote the letters, or that she authorized any one to write them, or that she was advised of their contents, they should have been excluded from evidence on motion. Nor were they rendered admissible because on redirect examination the witness stated that the name of the defendant appeared to be signed to the letters, and that they referred to her husband, and some of them were directed to him and some to the witness, and that they came by mail from a city where she told him that she intended

| 123 | 533 |
| Case 2 | |
| 124 | 436 |
| 123 | 533 |
| Case 2 | |
| 125 | 742 |
| 123 | 533 |
| 130 | 595 |

to go, although he did not know that she was in such city except from the fact that the letters came from that place.

5. The refusal to allow counsel to ask a question of a witness, to the effect that if another witness had testified that a bullet entered the skull of the deceased "on the left about where my finger is," and penetrated to the skull back near the ear, whether the other witness was mistaken, furnished no ground for a new trial. If the form of question was admissible at all, its materiality is not apparent in the absence of any information in the record as to where counsel in fact placed his finger as an indication of locality.

6. To warrant a conviction on circumstantial evidence alone, the proved facts must not only be consistent with the hypothesis of guilt but must exclude every reasonable hypothesis save that of the guilt of the accused. It is erroneous to charge that the jury would be authorized to find the defendant guilty unless there is some other hypothesis as reasonable as that the defendant committed the act.

7. In the absence of a request to charge on the subject of weighing the testimony of witnesses in cases of conflict, the omission of the judge to do so will furnish no ground for a new trial.

8. Where the jury returned into court a verdict of guilty, and while it was being received the foreman asked the presiding judge if the jury could find that the defendant be punished for a less term of years than her lifetime, to which he replied that they could not do so under a verdict of guilty, and the verdict was regularly received and recorded without objection or request that the jury be polled, or that they be required to return to their room for further deliberation, this furnished no ground for a new trial on behalf of the defendant, there being nothing to show that the verdict was not regularly agreed upon by the jury.

Argued June 19, — Decided, August 1, 1905.

Indictment for murder.     Before Judge Mitchell.     Berrien superior court.     May 15, 1905.

Nancy Campbell was indicted for the murder of her husband, Alex. Campbell, charged to have been committed on the 14th day of January, 1905. The evidence introduced on the trial was entirely circumstantial.     She was convicted, moved for a new trial, and, after refusal of the motion, excepted.

*Hendricks, Smith & Chastain,* for plaintiff in error.

*John C. Hart, attorney-general,* and *W. E. Thomas, solicitor-general,* contra.

LUMPKIN, J. (After stating the foregoing facts.)     1. A witness was allowed to testify in regard to the contents of certain letters. He stated that they were lost or destroyed, and what was the substance of them; but said that he did not know what they contained "word for word."     Objection was made to this evidence,

on the ground that the witness was allowed to testify to a part of the contents of the letters when he could not recollect all of them. There is plainly no merit in this objection.

2. Objection was made to permitting a witness to testify that he heard a conversation, "along in the fall," between the defendant and the deceased, tending to show that she was mad with him, and was complaining of his conduct. Where a wife was on trial, accused of the murder of her husband, it was competent to show ill will or bad feeling on her part toward him near the time of the alleged homicide, or a course of conduct or series of statements on her part, continuing until shortly before the alleged homicide, for the purpose of showing motive or malice on her part and to rebut the presumed improbability of a wife murdering her husband. If the evidence showed only a single instance of complaint of the conduct of the deceased, or a mere appearance of being mad several months before the death of her husband, without more, its admissibility would be very doubtful, and if admitted it would be of small importance. But if it is sought to show a line of conduct or course of ill treatment on the part of a wife toward her husband near the time of the homicide, such evidence would be admissible. *Roberts* v. *State*, ante, 146.

3. The house in which the deceased and his wife lived was burned immediately after the deceased was shot. A trunk was saved from the fire. A witness for the State was asked whether all the bedclothes in the house were burned, and answered, "I don't know; I had a good many gone that I never have seen." Objection was made to this, on the ground that it sought to prove the character of the defendant; but the objection was overruled. If erroneous, this ruling was wholly immaterial, as the witness testified: "She was washing for us, and sometimes she kept things there for several days. She done our washing and ironing. I didn't consider that she stole any of it. It is not unusual for washerwomen to keep things over from one week to another." It was equally immaterial that defendant's counsel was not allowed to ask a witness for the State this question: "That was getting along for negroes pretty well for six months, wasn't it?"

4. A witness for the State testified that he had received and seen certain letters written by the defendant, asking that her clothing be sent to her, she having been away from home for

several weeks. On the direct examination he spoke of these letters as being from the defendant. But on the cross-examination he said that he did not know that the defendant wrote them, or that she authorized any one to write them, or that she was advised of their contents. On redirect examination he stated that the name of the defendant was signed to the letters; that they referred to her husband, and some of them were directed to him and some to the witness; that they came by mail from Macon, but the witness did not know that the defendant was in Macon, except from the letters; that she told the witness she was going to Macon. Defendant's counsel moved to rule out this evidence, but the motion was overruled. This was error. There was no proof that the defendant wrote the letters, or that they were in her handwriting, or were authorized by her; nor was the mere fact that they contained a request that clothing be sent to her such an identification as to make them admissible in evidence.

5. A physician was introduced by the State, who testified in regard to the wounds found upon the body of the deceased. On cross-examination he was asked the following question: "Now, Doctor, if a man has sworn that the bullet entered on the left about where my finger is and penetrated to the skull back toward the ear, he is mistaken, is he not?" It was stated that an affirmative answer was expected. Counsel for the State objected to the evidence, and the court said: "No, I don't think that is competent. You can show where the wound is from the witness, and then it is a question for the jury." It does not appear where counsel who asked the question placed his finger, or what was the location indicated by the language,—or whether it corresponded with the place on the skull which had been referred to by the other witness or not. It is therefore impossible for this court to determine whether or not the question was a proper one, or whether any error hurtful to the defendant was committed.

6. The court charged, in effect, that if the jury believed that there was some other hypothesis equally as reasonable as that of guilt, such as that some other person than the defendant committed the offense, or that the deceased took his own life, the jury would not be authorized to find the defendant guilty. At another time he charged as follows: "If it is as reasonable

that the, deceased committed suicide, under the evidence in this case, as that the defendant shot him, then you would not be authorized to find her guilty; or as reasonable that some other person might have inflicted the wound, under those circumstances, you would not be authorized to find her guilty. But, if there are none as reasonable as that the defendant committed the act, you would be authorized to find her guilty as charged in the indictment." These charges were erroneous. In criminal cases depending entirely upon circumstantial evidence, in order to convict it is not sufficient that the hypothesis of guilt is the more reasonable; nor is it necessary, to authorize an acquittal, that there must be some other hypothesis equally as reasonable as that of guilt. This would seem to make the question of conviction or acquittal depend on the mere preponderance of reasonableness or probability among several hypotheses, and to require a conviction unless there were some other hypothesis just as reasonable as that of guilt. Such a rule, in a trial for murder, would be to make an issue of life or death turn upon whether different hypotheses were exactly balanced, or whether one preponderated slightly over the other. The true rule is, that, "to warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." Penal Code, § 984.

7. In the absence of a proper request, there was no error in failing to charge the law in regard to weighing the testimony of witnesses in case of conflict.

8. The jury having returned their verdict into court, while it was being received the foreman arose and asked the presiding judge if the jury could find that the defendant should be punished for a less term of years than her lifetime, to which the judge replied that they could not do so under a verdict of guilty. It was urged that this was error, and that the court should have remanded the jury to their room with instructions to make up and agree upon a verdict satisfactory to them. It does not appear that any request was made to poll the jury, or to have them return to their room for further consideration, or that any member of the jury failed to agree to the verdict as rendered. It seems to have been the unanimous verdict of the jury, properly returned, re-

ceived and recorded, and the mere inquiry on the part of the foreman as to the extent of the sentence did not furnish any ground for a new trial.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*