## SMITH *v.* THE STATE.

1. The charge of the court was adjusted to the facts of the case as presented by the evidence, in no view of which was the homicide either voluntary or involuntary manslaughter.
2. A correct charge presenting the law as to reasonable doubt concerning the whole case is all that one accused of a criminal offense is entitled to. It is not incumbent upon the court to carve the case or the evidence into different propositions, and apply the rule as to reasonable doubt to one or more of them severally.
3. There is no merit in the complaint of the accused that the court failed to correctly instruct the jury as to how they should arrive at the truth of the case as disclosed by the testimony. The court fairly and impartially presented to the jury the contentions of the respective parties, and the evidence warranted the conviction of the accused.

| | |
|---|---|
| 124 | 213 |
| 126 | 95 |
| 126 | 112 |
| 124 | 213 |
| f129 | 748 |

Argued October 18,—Decided November 13, 1905.

Indictment for murder. Before Judge Rawlings. Washington superior court. July 31, 1905.

The plaintiff in error, Fed Smith, was indicted for murder, the indictment charging him with shooting one Pete Street. When the case was called for trial, the solicitor-general announced that he had ascertained that the name of the person killed was Pete Threat, and proposed to nolle pros. the indictment and draw another charging the accused with the murder of Pete Threat. Thereupon counsel for the accused waived the "seeming defect in the indictment on

that account and agreed to go to trial waiving said defect and agreeing that the party referred to as killed was the same party as named in the indictment." A trial was had accordingly, the accused interposing the defense that another, and not he, had fired the shot that killed Pete Threat, who the evidence disclosed was killed while sitting in a chair in one corner of a house at which a dance was in progress. An altercation had occurred in the middle of the floor as to who should be the partner of one of the women present, and she and several other women gathered in the corner where Threat was sitting, apparently asleep, and began "fussing." He took no part in the controversy. According to testimony delivered by some of the State's witnesses, the accused, without any provocation or excuse, drew his pistol and fired in the direction of the crowd gathered around Threat. One of these witnesses swore that the accused had been sitting in a window across the room, and that, without any warning, he got up from the window, leaned over and shot, saying, "I shoot you damn niggers about trying to fuss in here," and that he started to shoot again, when his sister exclaimed, "My brother! stop him, stop him, he is ruint!" The accused had previously taken no part in the altercation, nor was his sister or any other relative involved in it. Evidence in behalf of the accused was introduced which tended to sustain his defense that he did not fire his pistol, but that another of the men in the room drew his pistol and fired the fatal shot, apparently without reason or any justification. The jury returned a verdict of guilty, and the accused excepts to the overruling of his motion for a new trial.

*Evans & Evans,* for plaintiff in error. *John C. Hart, attorney-general,* and *Alfred Herrington, solicitor-general,* contra.

EVANS, J. (After stating the facts.) 1. In view of the evidence upon which the State relied for a conviction, the court very properly charged the jury that should they find the accused fired a pistol into a crowd of persons engaged in a difficulty in a house where a dance was going on, and the shot struck a person and killed him, notwithstanding the accused may have fired at no particular person, but fired for some reason of his own to stop the difficulty, recklessly and without regard to human life and with a disregard as to whom he should kill, the shooting would be an unlawful one, and he would be guilty of murder if he fired the

pistol intentionally where people were fussing among themselves and not with him, though he had no intention to shoot any particular person. The complaint that this charge was not warranted by the evidence is not well founded. It presented the theory of the State, and in the same connection the court presented the contention of the accused that he was not the one who fired into the crowd. In no view of the evidence would the jury have been authorized to find that the accused was guilty of either voluntary or involuntary manslaughter; so there is no merit in the further complaint of the accused that the court did not instruct the jury as to the law bearing on the subject of manslaughter. Where, in a case such as the present, there is no circumstance connected with the killing which shows any provocation or mitigation, the law presumes malice. Penal Code, § 62; *Cook* v. *State, 93 Ga.* 201.

2. In charging upon this branch of the case, the court told the jury that should they find the accused did not fire the pistol and had nothing to do with firing it, but it was fired by someone else, it would be their duty to find the accused not guilty. It was not, as is insisted by counsel for the accused, incumbent upon the court to add: "Or, if you have a reasonable doubt as to these things, it would be your duty to give the defendant the benefit of the doubt and acquit him." The law relating to reasonable doubt was elsewhere in the charge fully presented, and the presiding judge concluded his charge by cautioning the jury that should they have "a reasonable doubt as to whether or not the defendant fired the shot —did the shooting," then it would be their duty to find him not guilty. The court therefore fully met every requirement of the law touching this phase of the case. *McDuffie* v. *State, 90 Ga.* 786; *Carr* v. *State, 84 Ga.* 250.

3. In giving to the jury the rules by which they were to be governed in determining the credit to be given to the witnesses who had been called on to testify, the court directed the jury to look to the manner of the witnesses on the stand, and instructed them that should they, "in looking at the testimony in this manner, ascertain any bias or prejudice, relationship, if any such exists, or any thing that influences their testimony," the jury could take the same into consideration in making up their verdict; and that they should also look to the opportunity the witnesses had to know the facts about which they testify, and "take into consideration all

the facts and circumstances attending the introduction of the testimony, and give to the testimony of the witnesses such weight and credit" as the jury might believe it was entitled to. This instruction is excepted to on the ground that the jury were thereby limited, in their consideration of what had been proved, to the "manner of the witnesses on the stand" and to the "facts and circumstances attending the introduction of evidence," and were not permitted to look to the evidence itself to ascertain whether any bias, prejudice, or relationship or anything else existed which influenced the testimony of the witnesses, or to ascertain what was the truth of the case. The instruction to which exception is taken was given in connection with other instructions on the same subject, and the jury could not have been thereby misled into the belief that they were not to look to the testimony itself, as well as to the circumstances attending its introduction, in determining its probative value.

Another complaint is that the court, in stating the contentions of the respective parties, gave a stronger emphasis to the side of the State than to that of the defendant, in that the court informed the jury that the State contended that the "facts and circumstances as proven showed that this homicide was murder," and, on the other hand, merely stated that "the defendant contended that he was not guilty of the charge," which statement "was calculated to impress the jury that the defendant was depending upon his own statement alone, rather than upon the sworn evidence, while the State was relying .upon sworn evidence." The accused could not have been prejudiced by this fair statement of the issue presented for determination by the jury. So far as appears, he was afforded an impartial trial, and his conviction was fully warranted by the evidence.     *Judgment affirmed. All the Justices concur.*