## CAMPBELL *v.* THE STATE.

1. A general objection to evidence consisting of a series of questions and answers is not well taken if some of the evidence is admissible.
2. The fact that in a trial for murder circumstantial evidence is relied on to prove both the corpus delicti and the connection of the accused with the killing does not render inapplicable a charge that "upon the unlawful killing of a human being malice is presumed by law, and that presumption remains unless it is rebutted by satisfactory testimony."
3. Where, after the completion of the judge's charge. counsel for the accused requested the court to charge on the law of impeachment of witnesses, stating that it was his contention that a named witness had been impeached, it was not an expression of opinion as to what had been proved for the court to .state in the presence and hearing of the jury: "I do not think, under the evidence as the court understands it, that it is necessary to give that in charge."
4. It was not error to refuse an oral request to charge on the subject of impeachment of witnesses; and the fact that the judge had previously been accustomed to granting such oral requests when he regarded them pertinent did not relieve counsel of the necessity to put his request for instructions on this subject in writing.
5. In a trial for murder it is not necessary for the State to prove a motive for the crime in order to support the presumption of malice which arises from proof of an unlawful killing.
6. The conviction rested on circumstantial evidence, much of which was not as strong as is desirable in capital cases. Its probative value, however, was for the jury; and as this is the second verdict of guilty, and as the trial judge has twice expressed his approval of the verdict by overruling the motion for a new trial, this court will not interfere.

Argued November 21,—Decided December 21, 1905.

Indictment for murder. Before Judge Mitchell. Berrien superior court. October 12, 1905.

*Hendricks, Smith & Christian,* for plaintiff in error.

*John C. Hart, attorney-general,* and *W. E. Thomas, solicitor-general,* contra.

CANDLER, J. Nancy Campbell was convicted of the murder of her husband, Alex. Campbell; and her motion for a new trial having been overruled, she excepted.

1. Error is assigned upon the refusal by the court to rule out certain specified evidence of a witness for the State. The evidence as set out in the motion consists of numerous questions and answers, many of which, at least, were entirely legitimate and admissible. Under the repeated rulings of this court, therefore, the assignment of error upon the refusal to rule out the entire evidence objected to is without merit. See *Hixon* v. *Asbury*, 120 *Ga.* 385, and cit.; 5 Enc. Dig. Ga. Rep. 305.

2. It is also complained that the court erred in charging the familiar principle of law that "upon the unlawful killing of a human being malice is presumed by law, and that presumption remains unless it is rebutted by satisfactory testimony." The error assigned upon this charge is that it was not adjusted to the evidence, and that "this principle of law is only applicable and should only be given in charge where the killing of the deceased was shown to have been done by the accused, by an eye-witness, by confession or a dying declaration; and especially is this true where the defendant disclaims all knowledge of the killing and explains her presence upon the scene of the homicide, and this is further true when the State has failed to prove the corpus delicti, and where the contention of the defendant was that the homicide was a suicide, or the act of some other person than herself and unknown to her." We find no error in this charge. While it is true that it would not be applicable in the absence of proof of the corpus delicti or that the accused had done the killing, it must be borne in mind that it is for the jury to say whether these essential elements of the crime of murder have been proved; and in the event either question were decided in the negative, the charge would be harmless, because the jury would never get to the point of considering it, as a finding that no crime had been committed, or that the accused had no part in the killing, would necessarily lead to an acquittal without an inquiry into the question of malice. If, however, the jury should find that a crime has been committed, and that the accused killed the deceased (both of which questions are solely for their determination), it is then their duty to take the additional step and inquire into the existence or absence of malice, without which there can be

no murder; and consequently it is entirely proper in such a case as the present for the trial judge to give appropriate instructions to guide them in the prosecution of this inquiry.

3. It appears that after the court had finished charging the jury, and before the jury had retired, counsel for the accused addressed the court as follows: "We would ask your honor to charge the jury on impeachment of witnesses. We are contending that we impeached the witness Ben Ford." To this request the court, in the presence and hearing of the jury, replied: "I do not think, under the evidence as the court understands it, that it is necessary to give that in charge." It is urged that this was "a direct and positive expression of opinion that no contradictory evidence was in the case, and that the jury should, as a matter of law and fact, believe everything that had been testified to by all the witnesses sworn upon the trial;" and the refusal of the trial judge to grant a new trial on this ground is assigned as error. The criticism of the charge which we have quoted is, we think, hardly just. There was no intimation by the court of what had been proved—merely an expression as to the necessity of a charge which had been requested; and it was entirely permissible for the court, when called upon, to state what evidence had or had not been introduced. Such a statement is in no sense an expression of opinion as to the probative value of the evidence. Had the court, without any comment whatever, bluntly refused to give the charge requested, his course would have been no less an expression of opinion as to what had been proved than was the statement that under the evidence as he understood it the charge was not necessary, for the one carried the other with it by necessary implication. The remark appears to have been addressed to counsel, and not to the jury, and was in direct reply to a request made by counsel. While this court has been strict in the limitations placed upon judges as to remarks made in the presence and hearing of the jury, we are clear that the question now under review presents no such improper conduct as to require the grant of a new trial. See *McLendon* v. *Frost, 57 Ga.* 449 (3); *Marion* v. *State, 68 Ga.* 290. Of course what is here said has reference entirely to the propriety of the judge's remark, and not to the accuracy of his conclusion as to whether in fact a charge on the subject of impeachment of witnesses was required.

4. We do not hesitate, however, to hold that the trial judge was

right in refusing to give this charge. There was no evidence whatever upon which to base it, which was a sufficient reason for refusing the request; and the request was not in writing, which was an additional reason. See cases cited in 7 Enc. Dig. Ga. Rep. 624-625. The custom of the judge to grant oral requests where he considered them pertinent can not dispense with the legal requirement that such requests should be in writing.

5. The written request to charge that "there can be no murder without malice, and no malice without motive," was properly refused. Common experience proclaims that many murders are committed where there is no apparent motive other than that which springs from an abandoned and malignant heart. Courts need not subscribe to the doctrine of original sin or innate depravity, but they are compelled to recognize many evidences which tend to support such views; and if it were indeed the law, as contended by counsel for the accused, that there can be no malice in a legal sense without a motive, and if it were necessary to prove a motive in order to convict of murder, very many red-handed murderers would go unwhipped of justice. The law presumes malice from an unlawful killing, and dispenses with the necessity of a motive to support the presumption.

6. It appeared from the evidence that the accused and her husband lived alone together; that about ten o'clock on the night of the homicide several shots were heard, apparently in their house, and that immediately thereafter the deceased ran out of the house, went a short distance, and fell dead. About this time the accused also ran out of the house in her night-clothes and went to the house of a neighbor near by. She was very much agitated, and said that Alex. (the deceased) was at home shooting, and she believed he was shooting himself. The neighbor to whose house she went was in bed at the time, but he got up and went to the scene of the shooting, afterwards returning with the information that the husband of the accused was dead. This witness testified: "She [the accused] stayed excited from the time she came in there until she found out the man was dead, and then after I went there and come back and brought the report that he was dead she seemed to get satisfied then." Immediately after the shooting the house in which it occurred caught fire and was burned to the ground, there being no direct evidence as to the cause of the fire. It appeared

that the accused had made statements relative to the positions in the bed that she and her husband occupied just prior to the shooting; and that after the house had burned down the ashes were examined and a pistol was found on the side of the bed on which, according to her statement, she had lain. There was no evidence that any other person than the accused and the deceased had been at the house on the night of the shooting. The testimony of the physician who examined the body of the deceased after the shooting, relative to the position of the wounds, tended to discredit the theory of suicide. There was no evidence of any previous state of bad feeling between the deceased and the accused. The statement of the accused was to the effect that on the night in question she had been asleep, and was awakened by the sound of pistol-firing; that she was badly frightened thereby, and, without investigating the cause of the firing, fled from the house. She did not undertake to say whether her husband killed himself or was assassinated by an unknown person who had entered the house while she was asleep; but she denied having any participation in the act herself.

It will be seen that the conviction rests on purely circumstantial evidence; and it must be confessed that the circumstances are not of that clear and convincing character which is desirable to support a verdict of guilty in a capital case. At the same time, we can not say as matter of law that the jury were not justified in finding that the proved facts were such as to exclude every reasonable theory other than that of guilt. The opportunity of the accused to commit the crime, the entire lack of evidence that any one else had such opportunity, and the improbability of the theory of suicide were circumstances which, when taken in connection with the other circumstances which have been mentioned, might well authorize the jury to find the accused guilty as charged. This is the second verdict of guilty which has been returned against her. (See *Campbell* v. *State,* 123 *Ga.* 533.) Two juries have heard the evidence, have looked upon the witnesses and the accused, have observed their demeanor in the court-room, and have, under circumstances the most favorable for arriving at a correct solution of the difficulties presented by the evidence, pronounced the accused guilty. The trial judge, upon whom the law places the responsibility of correcting the mistakes of juries, has twice, by his refusal to grant a new trial, placed upon the conviction the seal of his approval.

Under the settled rules of this court, therefore, this court will not disturb the judgment of which complaint is made.

*Judgment affirmed.   All the Justices concur.*