# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1912

### JOSEY *v.* THE STATE.

1. On the trial of one charged with the murder of his wife, evidence is admissible which tends to show that for a long period of time prior to the homicide and until a short time prior thereto, the defendant was cruel to and ill-treated his wife, as tending to show malice and motive, and to rebut the presumed improbability of a husband murdering his wife.

(*a*) In such a case, it is not necessary that all of such acts should be proved by the same witness.

2. Considered as a whole, there was no error in the charge complained of in the 2d division of the opinion.

3. Where one who is charged with the murder of his wife relies upon the defense of misfortune or accident, and the trial judge has correctly given the law in charge to the jury on that subject, it is not error for the court to fail to state the contention of the defendant that he relies upon accident as having caused the homicide, in the absence of a request so to do, especially where it is manifest from the judge's charge on this subject what the defense is upon which the defendant relies.

4. It is not error for the court to charge the jury, in a case where one is charged with the murder of his wife, and where the defense is that the homicide was caused by the accidental discharge of the defendant's pistol, that "If you believe that the defendant killed his wife without intending to kill her, but that it was done in the commission of an unlawful act which in its consequences naturally tends to destroy a human being, then the offense would be murder."

5. The evidence supported the verdict.

MARCH 12, 1912.

Indictment for murder. Before Judge Daniel. Pike superior court. December 16, 1911.

*E. C. Armistead,* for plaintiff in error. *T. S. Felder, attorney-general,* and *J. W. Wise, solicitor-general,* contra.

49

HILL, J. 1. Virge Josey was indicted for the murder of his wife, and found guilty by the jury trying him, with the recommendation that he be imprisoned in the penitentiary for life. A motion for a new trial having been overruled by the court, he brings his writ of error here for review. The fourth, fifth, sixth, and seventh grounds of the motion will be considered together, as they involve the same question, namely, the admission by the court of the testimony of certain witnesses tending to show acts of ill treatment and cruelty on the part of the husband toward his wife at different times previous to the homicide, covering a period of about two years, and extending nearly to the time of the homicide, the purpose of the evidence being to show malice and motive, and to rebut the presumed improbability of a husband murdering his wife. It is insisted on the part of the plaintiff in error that this testimony should have been excluded on the ground that it was not connected with the tragedy. We do not think there is merit in these grounds of the motion for a new trial; nor did the court err in admitting the evidence. This court has repeatedly held that "When a husband is on trial for the alleged murder of his wife, evidence tending to show a long course of ill-treatment and cruelty on his part toward her, continuing until shortly before the homicide, is admissible. Such evidence tends to show malice and motive, and to rebut the presumed improbability of a husband murdering his wife." *Roberts* v. *State,* 123 *Ga.* 146 (5), 157, and cases cited (51 S. E. 374); *Campbell* v. *State,* 123 *Ga.* 533 (2), 535 (51 S. E. 644); *Green* v. *State,* 125 *Ga.* 742 (3), (54 S. E. 724).

2. Objection is made to the charge of the court, as follows: "In regard to dying declarations I charge you this: You are instructed, gentlemen, that it is for the court in the first instance to determine whether the preliminary proof is sufficient to admit dying declarations, but this rule is not binding upon you; for you must be satisfied that such statements were actually made by the deceased, and that she made them when she was in the article of death, and was conscious of her condition at the time of making such declarations, if they were made. It is not necessary that the person whose statement is sought to be introduced should express herself as believing she is in a dying condition. Consciousness of her condition may be inferred from the nature of the wound, or other circumstances. Dying declarations made by any person in the article of death, who

is conscious of her condition, as to the cause of her death and the person who killed her, are admissible in evidence in the prosecution of the homicide. The admission of such statements is founded on the necessity of the case; and the reason is, that, being made in view of impending death and judgment, when the hope of life is extinct and when the retributions of eternity are at hand, they stand on the same plane of solemnity as statements made under oath. I charge you, gentlemen, that great caution is necessary in the use of dying declarations. The court has admitted this evidence, leaving you to determine whether the statements were or were not made by the deceased; and also whether the statements, if made by her, if she was at the time in the article of death, and whether she was conscious of her condition. If you believe the deceased made the statements, and you believe that she was at the time in the article of death, in a dying condition, and also believe she was conscious of her condition, then you should consider the statements along with all other evidence in the case. If you do not believe that she was in the article of death, in a dying condition, or if you do not believe that she was conscious of her condition, or if you do not believe that she made the statements, you should not consider them at all." It is contended that the above charge is erroneous: "(a) Because that part of the charge ·was too general, too restrictive, and too indefinite to guide the minds of the jury as to what weight should be given the statements that was actually proved on the trial of the case. (b) Because the court informed the jury that consciousness of her condition may be inferred from the nature of the wound, or other circumstances. (c) Because there was no evidence to authorize that part of the charge in which the court instructed the jury in the following words: 'The admission of such statements is founded on the necessity of the case; and the reason is, that, being made in view of impending death and judgment, when the hope of life is extinct and when the retributions of eternity are at hand, they stand upon the same plane of solemnity as statements made under oath.' (d) Because telling the jury dying declarations stand on the same plane as testimony given under oath dealt with the weight of the testimony." Taken as a whole, and fairly construed, we can not say that the charge was erroneous. The judge was not instructing the jury as to the weight to·be given to dying declarations, but rather as to their admissibility; and while

instructing the jury on this subject, he said: "they stand on the same plane of solemnity as statements made under oath," and followed that by adding, "I charge you, gentlemen, that great caution is necessary in the use of dying declarations," and also that the statements should be considered along with all the other evidence in the case. The language of the court first quoted above was evidently taken from the case of *Mitchell* v. *State,* 71 *Ga.* 128 (2), where similar language is used, and which was taken from *Campbell's* case, 11 *Ga.* 374, 375. While it is proper for this court to give its reasons in discussing the admissibility or rejection of testimony, as was done in the *Campbell* and *Mitchell* cases, it is not generally desirable for a trial judge to do so, as the jury might be misled thereby in some cases. But, as already stated, the charge of the trial judge excepted to, considered in connection with the context and the entire charge, could not, we think, have misled the jury in this case. It will also be observed that the objection urged in this ground of the motion was to the charge of the court, and not to the admissibility of the testimony. The testimony was admitted without objection, so far as the record discloses.

In order to render dying declarations admissible in evidence, it is not necessary to show that the declarant said affirmatively that she was in a dying condition, or used words of similar import. If she was in fact in a dying condition, and the circumstances were such as to indicate that she had knowledge that this was so, it is proper to allow the declarations to be proved and instruct the jury to determine for themselves whether or not the statements made by the deceased were "conscious utterances in the apprehension and immediate prospect of death." *Young* v. *State,* 114 *Ga.* 849 (40 S. E. 1000); *Perdue* v. *State,* 135 *Ga.* 278 (8), 285 (69 S. E. 184); *Washington* v. *State,* 137 *Ga.* 218 (73 S. E. 512). See also *Findley* v. *State,* 125 *Ga.* 579 (1, 2), 582 (54 S. E. 106); *Mitchell* v. *State,* 71 *Ga.* 128 (2); *Jefferson* v. *State,* 137 *Ga.* 382 (73 S. E. 499 (3)). It is insisted further that the charge quoted is erroneous, because the court told the jury that "consciousness of her condition may be inferred from the nature of the wound, or other circumstances." This portion of the charge is not erroneous under the facts of this case, and comes within the ruling made in the case of *Barnett* v. *State,* 136 *Ga.* 65 (70 S. E. 868), where it is held, that, "In an instruction on the subject of dying declarations, after charg-

ing that before such declarations may be considered as evidence the jury must be satisfied that the declaration of the deceased was actually made by him while in the article of death and conscious of his condition, it was not erroneous to charge, in immediate connection: 'It is not necessary that the person whose statements are sought to be introduced should express himself as believing that he is in a dying condition. Consciousness of his condition may be inferred from the nature of the wound, or from other circumstances.' *Anderson* v. *State,* 122 *Ga.* 161 (50 S. E. 46)." See also *Jones* v. *State,* 130 *Ga.* 274 (2), 276 (60 S. E. 840); *Dumas* v. *State,* 62 *Ga.* 58 (2).

3. Complaint is made that the court erred in "failing to instruct the jury that the defense relied on was accident and misfortune." It is insisted that the court in no part of its charge to the jury stated what the defendant's contention was in this respect. The charge itself shows that the court correctly charged the jury the law on the subject of homicide by accident and misfortune. He charged them that: "If you find in this case that the defendant killed his wife, and that it was an accident—that he didn't intend to kill his wife—that the firing of the pistol was accidental, in which there was no culpable neglect, no evil design, no intention to kill her, you would not be authorized to find him guilty of any offense." It is plainly manifest from this charge what the defense relied upon was, as well as from the defendant's statement. No exception was taken to the charge on this point, nor was a request made for a statement of the defendant's contention that the killing occurred by accident. If more detailed instructions from the court to the jury on this point were desired, a request therefor should have been made. *Williams* v. *State,* 125 *Ga.* 235 (54 S. E. 186).

4. The following charge of the court is assigned as error: "If you believe that the defendant killed his wife without intending to kill her, but that it was done in the commission of an unlawful act which in its consequences naturally tends to destroy a human being, then the offense would be murder." We think the charge as given was correct. Penal Code (1910), § 67; *Smith* v. *State,* 124 *Ga.* 213, 214 (52 S. E. 329); *Hamilton* v. *State,* 129 *Ga.* 747 (59 S. E. 803); *Gadsden* v. *State,* 134 *Ga.* 785 (68 S. E. 497).

*Judgment affirmed. All the Justices concur.*