## DEW v. SMITH.

</div>

1. The board of roads and revenue of Floyd county, under the Political Code, §§ 333-336, as amended, by the act of December 14, 1899 (Acts 1899, p. 23), may abolish a militia district, and change the limits of an adjoining district so as to include the territory of the abolished district, whenever it may be necessary and expedient. Where the proceedings conform to the statute, and the order of the commissioners recites that the proposed change is necessary and expedient, the order making such changes in district lines is not void on the ground of wilful abuse of discretion because the applicants for the order recited in their application that they desired such change in order to secure the benefits of the stock law in force in an adjoining district.
2. In reaching a conclusion as to the necessity and expediency of the proposed change of district lines, the board of commissioners may act on the report of special commissioners appointed by them pursuant to the

Political Code. § 333, to examine into the ·matter. By their approval of such report the board of commissioners adopt the same as their act.

3. When the lines of a militia district are legally changed, the territory thus added to a district becomes subject to the system of fences or stock law which prevails in that district.

4. The owner of premises in a stock-law district· may lawfully impound animals going at large upon his premises. The owner of the animals can not by possessory warrant recover possession of animals lawfully impounded. This remedy is applicable only to cases specified in the Civil Code, § 4799. If the impounder of the animals unlawfully detains them, the owner's remedy is by an action of trover, with a requirement of bail, if necessary.

Argued January 15,—Decided April 17, 1908.

'Possessory warrant. Before Judge Wright. Floyd superior court. May 8, 1907.

*M. B. Eubanks,* for plaintiff.

*F. W. Copeland* and *J. F. Hillyer,* for defendant.

EVANS, P. J. The plaintiff in error sought, by means of a possessory warrant, to recover possession of certain cattle alleged to be in the wrongful possession of the defendant in error. The case was tried upon the following statement of facts: "Plaintiff resides in Everett-springs district (1337) Floyd county, Georgia. Defendant resides in the same district, the cattle in controversy being the property of plaintiff. Said cattle were allowed to run at large, and, going upon the premises of defendant in said district, were impounded by defendant. Plaintiff found the cattle in the possession of defendant and demanded them of defendant; defendant refused to deliver them to plaintiff, and plaintiff sued out the possessory warrant now before the court. This warrant was placed in the hands of the officer, who found the cattle in defendant's possession, seized them, and arrested defendant. The cattle are worth the sum alleged, and were, prior to the time defendant impounded them, in the lawfully-acquired and peaceable possession of plaintiff. Everett-springs (1337) district was created prior to 1895, and is the extreme northern district of Floyd county; this district is bounded on the east by Gordon county, on the north and west by Chattooga county, and on the south by Floyd-springs (949) district of Floyd county. The adjoining districts in Gordon county are 'no-fence' or 'stock-law' districts. Floyd-springs (949) district, Floyd county, is what is known as 'no-fence' or ·'stock-law' district. Stock law went into effect in Floyd-springs

district during the year 1897. The adjoining districts in Chattooga county, extending across the north and west side of Everett-springs (1337) district are 'fence' districts. . . Everett-springs district contained at the last general election 120 white voters registered. At the October term, 1906, P. B. Smith et al., citizens of Everett-springs (1337) district, filed with the board of commissioners of roads and revenue of said county, a petition to change the lines of Floyd-springs district (949), so as to include or cut all of Everett-springs (1337) district into Floyd-springs (949) district." The petition and all subsequent proceedings, including the order of the board of commissioners making the change in the district lines, are set out in full in the agreed statement of facts, and were in accordance with sections 333 to 336, inclusive, of the Political Code, and were properly certified to the Governor. The petition set out that the undersigned freeholders "petition your honorable body to cut our district into Floyd-springs district, that we may get the benefit of stock law." The order of the board, appointing the special commissioners, directed them to go upon the premises and view the proposed change, and if they found it of "public utility," to proceed to lay out and define the lines, and make their report under oath to the board. The report of the special commissioners recommended "the change asked for as expedient and of public utility." The board of commissioners, in regular monthly session, after reciting that a petition had been filed and a special commission appointed, who had reported that "said change is expedient and of public utility," ordered that the Everett-springs district be abolished, by extending the limits of the Floyd-springs district so as to include the territory of the district so abolished.

1. The first point raised by the plaintiff in error is the legality of the proceedings before the board of commissioners of roads and revenue of Floyd county, abolishing the Everett-springs militia district, and attaching its territory to the adjacent Floyd-springs militia district. The Political Code, §333, as amended by the act of December 14, 1899 (Acts 1899, p. 23), provides that "whenever it may be necessary and expedient to lay out a new militia district, or to change the lines of the old ones, or to consolidate or abolish old districts, the ordinary may, at any time, appoint three commissioners, citizens of the district or districts from which it is proposed to make the new district, or change the lines thereof, whose

duty it shall be to lay out and define such lines, and report the same to the said ordinary." Sections 334, 335, and 336 of the Political Code furnish the machinery for·changing the lines of a district or abolishing a district. It is provided that the citizens appointed as special commissioners shall file their report as to the expediency or necessity of making the change in district lines or abolishing the district, with the ordinary, who, in the event the report meets his approval, shall record the proceedings upon the minutes, and transmit a certified copy thereof to the Governor, and publish them for thirty days at the door of the court-house, and in the public gazette where he does his official advertising. The approval of this report of the special commission is a matter entirely in the discretion of the ordinary, and unless there has been a wilful abuse of discretion his action is final. The power vested in the ordinary under these sections is vested in the board of commissioners of roads and revenue of Floyd county as to militia districts within that county. Acts 1880-1, p. 508; *Conley* v. *Poole,* 67 *Ga.* 254. The plaintiff in error insists that the proceedings show upon their face that the Everett-springs district was abolished to enable the freeholders, who applied to the commissioners to change the lines of the districts, to receive the benefits of the stock law, and not because such change was necessary or expedient. The petition shows that its signers were actuated by such motive, but the subsequent proceedings disclose upon their face that the official action of the board was based upon the expediency and public utility of the proposed change. It is not to be presumed, in a collateral attack upon their action, that the commissioners were influenced by any other motive than that expressed in their order changing the lines of one district so as to include the territory of an adjoining district. The desire to secure the benefits of the stock law inspired those who instituted the proceedings, but we can not say that such was the moving consideration inducing the board of commissioners to act, when the record affirmatively discloses that their action was based upon the expediency and public utility of such change.

2. It is said that the judgment of the board of commissioners is void, because the proceedings affirmatively disclose that they did not exercise any discretion in determining upon the necessity or expediency of the change, but delegated their discretion to the

special commissioners appointed to report upon the expediency and utility of the change, and that the board simply acted upon this report. The board had a legal right to reject this report and act upon their own judgment. *Hillsman* v. *Harris,* 84 *Ga.* 432 (11 S. E. 400). Their concurrence with the special commissioners, as to the necessity and expediency of the proposed change, was none the less the affirmative action of the board, because of their adoption of the report made to them by the commissioners pursuant to the statute. The law contemplates that such action as is taken by the board of commissioners, in the absence of fraud or a wilful abuse of their discretion, shall be final, and the only remedy of those dissatisfied persons affected thereby is that indicated in *Hillsman* v. *Harris,* supra, namely, they will have an opportunity of appearing before the successors of the present commissioners, who can restore the lines if they deem it necessary and expedient.

3. It appears from the agreed statement of facts that previous to the action of the commissioners of Floyd county, the people of the Floyd-springs district had adopted the provisions of the stock law as contained in the Political Code, §§ 1772-1780. It is contended that these provisions are not extended by the proceedings of annexation over the annexed territory. When the lines of a militia district are legally changed, the territory thus added to a district becomes subject to the system of fences or stock law which prevails in this district. *Hackney* v. *Leake,* 91 *Ga.* 141 (16 S. E. 966). The case of *Hackney* v. *Leake* was decided before sections 1778 and 1781 of the Political Code were amended by the act of 1899 (Acts 1899, p. 29). The amendment was to the effect that before the stock law shall become effective in militia districts as the result of a subsequent election held under these code sections, a lawful fence shall be erected within six months after the election, around such portions of the militia district as touch non-stock law or fence districts or counties. It is urged that since the act of 1899, the stock law prevailing in a militia district can not be extended over territory annexed to such district, unless fences are erected along the lines of the added territory adjacent to fence districts or counties. It appears from the agreed statement of facts that the Floyd-springs district had adopted the system of stock law prior to the act of 1899. At the time the stock law became operative in this district, fences were not required to be

erected on lines touching localities where the stock law was not in force. The stock law was in full force without any district-line fence, and this condition of affairs was not altered by the act of 1899. When territory was added to this district it became a part of the district, and subject to all local laws in force in such district. The act of 1899 does not apply to a case of this kind. It is designed to meet the case of the adoption by a militia district of the stock law upon compliance with precedent conditions. If the stock law had been adopted in Floyd-springs district after the passage of the act of 1899, annexed territory probably would be required to be fenced, on the principle that such was a requirement of the law at the time of its adoption. But the stock law did not require the fencing of district lines when the voters of Floyd-springs district adopted it by a referendum vote; and when territory is annexed thereto by authority of law, the annexed territory becomes subject to the local law of the district to which it is annexed.

4. The plaintiff in error further contends that even if the cattle were lawfully impounded, as there was no demand for damages, the impounder should have surrendered their possession to the owner upon demand, and his refusal so to do authorized the owner to recover possession by possessory warrant. The owner of premises may lawfully impound animals found going at large on his premises in those localities where the stock law prevails. Polit. Code, § 1774. A possessory warrant does not lie unless the defendant acquired possession of the stock impounded, in one of the modes set forth in the Civil Code, § 4799. *Trotti* v. *Wyly,* 77 *Ga.* 684. As the owner of the premises had the legal right to impound the cattle of the plaintiff in error, he acquired his possession by authority of law, and it was therefore not unlawful. If the impounder converted the cattle to his own use, or unlawfully detained them, the remedy of the owner was not by possessory warrant, but by an action of trover, with a requirement of bail if necessary. *Owens* v. *Outlaw,* 105 *Ga.* 447 (30 S. E. 427).

The judgment of the court refusing to award the cattle to the plaintiff in error is

*Affirmed. All the Justices concur, except Atkinson, J., who dissents.*