## 4634. BAKER *v.* THE STATE.

1. Where one cocks a loaded gun, places his finger upon the trigger, and points it at another, not intending to shoot, and the gun is discharged without design, but as a result of his culpable neglect while in the unlawful act of pointing it at another, he may be convicted of involuntary manslaughter in the commission of an unlawful act, if the person at whom the gun is aimed dies from wounds received from the discharge of the gun.
2. The principle announced in the preceding headnote was applicable to some of the evidence, construed in connection with the prisoner's statement.
3. It was not error to charge the jury: "If you find that the defendant pointed a gun at the deceased, not intending to kill him, and pulled the trigger and fired, the result of such conduct, under the law, would not be accident."
4. The following instruction was erroneous as giving undue emphasis to evidence, the weight of which should be left for determination by the jury: "I charge you that the theory of the law, in admitting dying declarations as evidence, is that a person would be just as sure to make a truthful statement when he is in the article of death, when he knows that he is to leave this world and enter the next world, as if he was under the sanctity of an oath."

DECIDED APRIL 2, 1913.

Conviction of manslaughter; from Montgomery superior court— Judge Hawkins. December 16, 1912.

*John R. Cooper, C. P. Thompson,* for plaintiff in error.

*W. A. Wooten, solicitor-general,* contra.

POTTLE, J. The accused was convicted of involuntary manslaughter in the commission of an unlawful act. It appears that the accused and a brother of the deceased were engaged in a dispute in reference to a sum of money which the brother owed the accused. While the dispute was in progress the deceased rode up and suggested that the accused put up the gun which the accused had in his hand, and go home and take dinner with the two

brothers. The accused, who was drinking, declined this invitation, and raised his gun, cocked it, and pointed it at the deceased. The deceased thereupon approached the accused, took hold of the gun by the barrel, pushed it down, and, while in this position, it was discharged, and the load of small shot entered his leg. He died three days afterwards in consequence of the wound thus received. The accused claimed that the homicide was the result of misadventure,—that the gun was accidentally discharged in a scuffle over it between him and the deceased. Taking the evidence all together, in connection with the prisoner's statement, the jury were authorized to find that the accused pointed the gun at the deceased with no intention to discharge it, and that it was fired without design on his part. If this be true, the accused was guilty of involuntary manslaughter in the commission of an unlawful act. It was unlawful to point a gun at the deceased; and the trial judge correctly so charged the jury. The law of misadventure or accident, as contained in the Penal Code, expressly excludes culpable neglect; so that, if a homicide be committed without evil design or intention, but with culpable neglect, it can not be said to have been the result of misfortune or accident. Penal Code, § 40; *Allen* v. *State,* 134 *Ga.* 380 (67 S. E. 1038). Under the prisoner's statement it was proper for the judge to give in charge this section of the code. But the jury had the right to accept that theory of the evidence which indicated that the deceased came to his death in consequence of the unlawful act of the accused in pointing the gun, and his culpable neglect in connection therewith. Penal Code, § 67. There was no error in any of the instructions upon this subject which are complained of in the motion for new trial.

4. It was erroneous to charge as set forth in the fourth headnote. The jury are the exclusive judges of the weight to be given evidence of a particular character. It is error to charge the jury, in substance, that a man in the article of death is just as apt to make a truthful statement as if he were testifying under oath. It is for them to say what weight and credit is to be given a dying statement, taking into consideration all the circumstances. It would be equally erroneous to instruct the jury that the testimony of a witness under oath should receive the same credit as if it had been made as a dying declaration. It is the province of the jury, and not the judge, to make comparisons between different kinds of

evidence, and determine which should be given the greater weight. "Admissibility of testimony is for the court; its weight and comparative value for the jury." *Smalls* v. *State*, 6 *Ga. App.* 502 (65 S. E. 295). It is not every sound proposition of law as stated in an opinion of a reviewing court which can properly be given in charge to the jury. Language used by the Supreme Court and this court frequently contains intimations of opinion, which have no place in a charge to a jury. In *Hunter* v. *State*, 43 *Ga.* 484, the court declined to charge the jury that confessions were the highest species of evidence. The Supreme Court approved this refusal to charge, saying, that "it was not the duty of the judge to classify the evidence as to its weight and consideration, or intimate any opinion thereon." In *Calvin* v. *State*, 118 *Ga.* 73 (44 S. E. 848), the court charged the jury that a confession stated to the jury by a credible witness "is of the highest order of testimony." A new trial was granted because of this instruction. See, also, *Bourquin* v. *Bourquin*, 110 *Ga.* 440 (35 S. E. 710), where it was held to have been erroneous to instruct the jury that particular evidence was entitled to great consideration. In *Rouse* v. *State*, 135 *Ga.* 227 (69 S. E. 180), the court charged that the testimony of an honest, experienced, and impartial expert is entitled to great weight. This instruction was held to be erroneous. In *Strickland* v. *State*, 6 *Ga. App.* 536 (65 S. E. 300), the following instruction was held to be a violation of the Civil Code, § 4863, forbidding an expression or intimation of opinion by the trial judge in reference to what has or has not been proved, or as to the weight of the evidence: "I charge you that character, even when it is shown to be good in a general way, is no evidence, or is not sufficient evidence to satisfy you beyond a reasonable doubt that a crime has not been committed." In *Pyle* v. *State*, 4 *Ga. App.* 811 (62 S. E. 540), the trial judge charged, on the subject of dying declarations, that "when a dissolution is approaching and the dead man has lost hope of life and his mind feels the full consciousness of his condition, the solemnity of the scene gives to his statement the sanctity of truth." It was held that this instruction gave undue emphasis to the weight which the jury should give to dying declarations. In *Campbell* v. *State*, 11 *Ga.* 375, Judge Lumpkin said, "it must be admitted that great caution should be observed in the use of this kind of evidence." And

another noted and distinguished jurist, in a discussion of this species of evidence, said: "When a party comes to the conviction that he is about to die, he is in the same practical state as if called on in a court of justice under the sanction of an oath, and his declarations as to the cause of his death are considered equal to an oath, but they are nevertheless open to observation. For though the sanction is the same, the opportunity for investigating the truth is very different, and, therefore, the accused is entitled to every allowance and benefit that he may have lost by the absence of the opportunity for more full investigation by the means of cross-examination."

Many differ as to the weight to be given dying declarations. Some think that a man is as apt to tell a falsehood when death is approaching as at any other time. Others hold that a statement made in the article of death by one conscious of his condition is entitled to very great weight and consideration, upon the theory that one without hope of life would be unwilling to cause harm to his fellow man by telling a falsehood in reference to the manner in which the mortal wound was inflicted. Those who hold this opinion think that consciousness of impending death takes away motive for revenge and gives to a solemn declaration, made under such circumstances, the very sanctity of truth itself. Oftentimes the jury may be composed of men holding different opinions in reference to the weight to be given to this character of evidence. Some of the jurors might think that the dying statement ought to be given the same weight as testimony delivered on oath. Others might be of the opinion that since the accused has had no opportunity for cross-examination, the statement ought to be received with caution and scanned with care. The trial judge had no right, by an expression of his own opinion, to settle this conflict among the jury. He should not tell them what weight to give this species of evidence. He should simply charge them when and under what circumstances an alleged dying statement should be considered by the jury, and leave them free to determine what weight the statement is entitled to, if they consider it at all. The statute compels us to order a new trial whenever the judge expresses or intimates an opinion as to what has or has not been proved, or as to the weight the jury should attach to any particular kind of evidence. We have no discretion in the matter, and we

order a new trial in this case in obedience to statutory mandate. *Wright* v. *State, 5 Ga. App.* 813 (63 S. E. 936).

> *Judgment reversed.*