### 19332.   CAIN *v.* THE STATE.

DECIDED JANUARY 15, 1929.

130

*John I. Kelley, O. A. Nix,* for plaintiff in error.

*Pemberton Cooley, solicitor-general, I. L. Oakes, G. F. Kelley,* contra.

BLOODWORTH, J. (After stating the foregoing facts.) ■
Three arguments were announced to be made by the State. The
order of arguments was as follows: One for the State, one for the
defendant, one for the State, one for the defendant, one for the
State. The State had the opening and conclusion, the defendant
having introduced evidence. The motion for a new trial complains
that the court erred in permitting counsel for the State "to make
an argument to the jury between the two arguments of counsel for
the defendant." "Where a number of counsel are engaged, the
order in which they may argue is in the discretion of the court,
unless such order is expressly regulated by rule of court or by
statute." 16 C. J., § 2223, p. 888, and cases cited in footnote.
While the statute of Georgia regulates the opening and conclusion
of arguments, we know of no statute of this State or rule of the
trial court which prohibits the order of argument pursued in this
case. On the contrary, the rule of that court seems to require this
order of argument, as evidenced by the following ruling embodied
in this ground of the motion: "It has been the *custom* since I
have been on the bench, where there has been as many as three
arguments for the State and only two for the defendant's counsel,
the court has universally held, which I hold in this case, that the
State has to open the case with an argument and then counsel can
alternate on each side, and that gives the State the opening and
conclusion, but with no two arguments together." There is no
merit in this ground of the motion.

■ The 5th special ground complains that the court erred in
failing to instruct the jury on the law of involuntary manslaughter.
While there was an abundance of evidence to authorize the verdict
of voluntary manslaughter rendered, the verdict was not absolutely
demanded by the evidence, and there was some evidence which the
jury, under a proper charge, might have construed as proof of
involuntary manslaughter. In involuntary manslaughter there is
no intention to kill. Penal Code, § 67. There was some evidence
to the effect that the deceased came to his death because his head
hit on some snags while he was scuffling with Elbert Cain; that
Elbert Cain did not hit him with the gun; and that Elbert Cain got
the gun from him and still made no effort to hurt him. Had the
jury believed this evidence they might have concluded that, even
though the homicide was not justifiable and was illegal, there was ·

*no intention* on the part of Elbert Cain to kill the deceased. Since it was the contention of the State that the defendant on trial was a conspirator of Elbert Cain, aiding and abetting him, Elbert Cain's act, under this theory, was, in legal contemplation, the act of the defendant, and any favorable construction of the evidence that might inure to the benefit of Elbert Cain would likewise inure to the benefit of the defendant. Furthermore, there was evidence that the defendant himself had the gun and a full opportunity to shoot the deceased and did not do so. The defendant contended that Elbert Cain did not hit the deceased on the head with the gun. There was ample evidence that he did hit the deceased several times on the head with the gun, and that these blows resulted in his death. This, in connection with the other facts and circumstances in the case, authorized the verdict of voluntary manslaughter. However, the jury might have concluded that the refusal of the defendant and of his alleged conspirator to shoot the deceased when they had an opportunity to do so showed that there was no intention to kill; and accordingly, under a proper charge, would have rendered a verdict of involuntary manslaughter. In *Hanvey* v. *State,* 68 *Ga.* 613, it was held: "If a deadly weapon be used in a homicide in the usual and natural manner in which such weapon would produce that result, the presumption of an intention to kill would arise. *Aliter* if the weapon were used in a manner not naturally calculated to produce such result." And in the opinion (p. 616) the court said: "If a deadly weapon is used to accomplish the killing, which is likely to produce death when used in the manner the proof shows it was used, the law presumes that the person using it intended to kill. This presumption may be removed by proof. Express malice is the deliberate intention, etc. There can be no question as to the meaning of the sentence excepted to, which was, that if a deadly weapon were used in the killing, and the proof showed that it was used in the manner in which such weapons were used to kill, then the law presumed that the person so using it intended to kill. That is to say, if a man used a pistol in the killing, and fired it, and thus killed the deceased, the presumption of the law was that he intended to kill, because he used it in the manner such weapons were used to kill. *But if he should strike the deceased with the barrel and kill him,* that not being the manner in which such deadly weapon was used

to kill, then *the presumption would not arise."* (Italics ours.)

The intent was a question for determination of the jury from the facts and circumstances deduced on the trial. "If a deadly weapon be used in the commission of a homicide in the usual and natural manner in which such weapon would produce that result, such as intentionally shooting another with a gun, the presumption of an intention to kill would arise. But a weapon may be used in a manner not naturally calculated to produce death; and in such a case *the question of intent to kill is one of fact."* (Italics ours.) *Delk* v. *State,* 135 *Ga.* 313 (3) (69 S. E. 541, Ann. Cas. 1912A, 105). In the opinion Justice Lumpkin, speaking for the court, said (p. 315): "But a deadly weapon may be used in such a manner as not necessarily to raise such a presumption, but to leave the intent as a question of fact for the jury. Thus, to strike one with the barrel of a pistol instead of shooting him with the weapon, or to strike with the handle of a dirk instead of with the blade, would not be the ordinary way of using such a weapon to kill, and the intention to kill would be rather a question of fact than of presumption." In *Jackson* v. *State,* 76 *Ga.* 473 (3), the Supreme Court said: "There can be no involuntary manslaughter where the intention is to kill. If there is *any evidence* to raise a doubt, *even though slight,* as to the intention to kill, the court should give in charge the law of involuntary manslaughter, but if there is nothing to raise such a doubt, the failure to charge on that subject will not require a new trial." This court held in *Warnack* v. *State,* 3 *Ga. App.* 595 (2) (60 S. E. 290), that "When, from the evidence or the statement, some doubt, although slight, might arise as the intention to kill, the court should give in charge the law of involuntary manslaughter." In *Griffin* v. *State,* 18 *Ga. App.* 462 (5 *a*) (89 S. E. 537), this court held: "If there is anything deducible from the evidence, or from the defendant's statement at the trial, that would *tend to show* manslaughter, voluntary or involuntary, it is the duty of the court to instruct the jury fully on the law of manslaughter." A defendant's statement alone, however, though it might authorize, would not require such a charge, in the absence of a request. *Parks* v. *State,* 105 *Ga.* 248.

In this case there was some evidence from which the jury might have determined that the defendant and his alleged conspirators attacked the deceased unlawfully but without any intention to kill;

134

or that their attack was justifiable and lawful and without any intention to kill, but was in an unlawful manner which probably might produce death and did produce death. In the light of the evidence and the rulings of the Supreme Court and of this court, the failure to charge the law of involuntary manslaughter will require another trial of the case.

The 6th special ground of the motion complains of the court's failure to charge the law of circumstantial evidence. Since, under the contention of the State, the defendant's guilt depended upon a conspiracy with J. C. Cain and with Elbert Cain who made the felonious assault upon the deceased, and since the evidence of this conspiracy was wholly circumstantial, we are of the opinion that the court should have charged the law relative to circumstantial evidence.

The 7th special ground of the motion complains of the admission in evidence of certain statements made by the deceased to his wife a few minutes after the fatal encounter. The trial court evidently considered that these statements were so nearly connected with the difficulty in point of time as to be free from all suspicion of device or afterthought, and consequently to be admissible as a part of the res gestæ. Penal Code (1910), § 1024. However, whether or not these statements were admissible as a part of the res gestæ, the admission of them is no cause for a new trial, because the dying declaration of the deceased, which was properly admitted, embodied the same evidence. *Jefferson* v. *State,* 137 *Ga.* 382 (4) (73 S. E. 499); *Dill* v. *State,* 106 *Ga.* 683 (2) (32 S. E. 660).

The 8th special ground of the motion complains of the court's failure to instruct the jury with reference to the evidence which was admitted upon the theory that it formed a part of the res gestæ. Since the same evidence was properly admitted in the dying declaration, as stated in the preceding paragraph, and since the court charged fully on dying declarations, and in view of the court's charge generally on the degree of evidence necessary to convict, and since there was no request to charge with reference to this particular evidence, the failure so to charge was not error.

The excerpt from the charge in reference to dying declarations, set out in the 9th special ground of the motion, shows no error.

Because of the court's failure to charge on involuntary man-

slaughter and on the law of circumstantial evidence, the judgment overruling the motion for a new trial must be

*Reversed. Broyles, C. J., and Luke, J., concur.*