## 20342. CAIN *v.* THE STATE.

DECIDED APRIL 15, 1930.

*John I. Kelley, O. A. Nix,* for plaintiff in error.
*Clifford Pratt, solicitor-general, I. L. Oakes, G. F. Kelley,* contra.

LUKE, J. The indictment jointly charges Math Cain and his two sons, Elbert Cain and J. C. Cain, with murdering L. J. Henry "by striking and beating the said Henry with a certain blunt instrument to the grand jurors unknown." Math Cain was tried separately and found guilty of voluntary manslaughter. The exception here is to the judgment overruling the motion for a new trial, based upon the usual general grounds and several special grounds.

Mrs. L. J. Henry testified that her husband had constructed a small terrace to keep water from running into his field, and that said terrace "ran out to the road and possibly a little bit past;" that on the day he was killed he left home with his gun, without saying where he was going; that when she next saw him he was coming home just before sundown without his gun; and that he was "reeling and staggering and heaving, trying to vomit." The witness then testified: "I asked him what was the trouble, and he said, 'they have about killed me. . . Math Cain drawed a double-barrel shotgun on me, and told me if I moved he would kill me, and Elbert crawled through the barb-wire fence and picked up my gun and beat me over the head with it, and nearly killed me.' He said this took place close to where he fixed his terrace, and he said he was in the pasture right where he fixed that terrace, and J. C. Cain came along and run over it, and the car came up about that time, and Math and Elbert and his wife were in the car, and Math drawed a double-barrel shotgun on him, and told him if he moved he would kill him, and Eb crawled through the fence and beat him over the head with it." This witness further testified that she put her husband to bed, and got Hugh Sullivan and Tally Duncan to carry him to a doctor, and that when her husband returned from the doctor's at about ten o'clock that night he appeared to be better. This witness further swore: "This was done on Monday night. He lived until Wednesday at about two o'clock. After twelve o'clock Tuesday he would call for water and headache powders. He called for headache powders about every three or four minutes, and about twelve o'clock that night he never did speak any more. My son Herschel came during the morning. He was still conscious. He knew Herschel. Herschel asked him how he was getting along, and he said: 'I am in bad shape. . . I can't live. . . They have killed me. . . I carried my gun yesterday evening out to this hollow. I thought I would see if I could kill a squirrel, and when I come back to the terrace, J. C. came along and run over the terrace, and in a few minutes Math and Elbert and his wife came along in the car, and Math got out and drawed a double-barrel shotgun on me, and told me if I moved he would kill me, and Eb. crawled through the fence, and took my gun and beat me over the head and killed me.'"

It appears from the testimony of two doctors, sworn for the State,

that L. J. Henry had four wounds on his head; that these wounds apparently were made with some blunt instrument; that there were two small fractures in Henry's skull; that Henry's death was caused by a very large blood-clot on the brain; and that this blood-clot was the result of the blows on his head.

There was in the case some evidence from which the jury could have concluded that the Cains had formed a conspiracy to attack Henry. On the other hand, according to the defendant's statement at the trial and the testimony of his witnesses, the difficulty was not premeditated or expected by them. The substance of the defendant's case is that J. C. Cain was going to his home by his usual route after a day's work, and that when the other Cains approached the place in the road near the terrace on their way to buy some chickens, they saw Henry with his shot-gun drawn on J. C. Cain; that Elbert got out of the automobile in which he was traveling and approached Henry in order to take the gun from him to keep him from shooting J. C. Cain; that Henry pointed his gun towards Elbert, and Elbert seized it; that a struggle ensued between Henry and Elbert for the possession of the gun, during which they fell to the ground several times; that in falling Henry struck his head against some hard substance on the ground and was wounded on his head; that the defendant never had any gun, and never pointed a gun at Henry; that when Elbert finally got Henry's gun, the difficulty ended; that though the Cains had every opportunity to shoot Henry, they made no effort to do so; and that Henry walked away, and no one knew that he was seriously hurt.

This case has already been reviewed by this court. See *Cain* v. *State,* 39 *Ga. App.* 128 (146 S. E. 340). The evidence appearing in the record on the first trial of the case does not materially differ from that in the present record. Upon the first appearance of the case here it was held: "Since, under the contention of the State, the guilt of the defendant in this case depended upon a conspiracy, and the evidence of the conspiracy was wholly circumstantial, the court should have charged the law relative to circumstantial evidence." What was said then is the law of the case now.

In the trial which we are now reviewing, the court charged that the conspiracy must be shown "by proving facts consistent with the hypothesis of the existence of such conspiracy, and to the exclusion of every other reasonable hypothesis save that of the existence of

such conspiracy." This charge was confined solely to proof of the conspiracy, and nowhere else in his instructions did the court charge the law of circumstantial evidence. The precise question raised by the fourth ground of the motion for a new trial is whether or not the court erred in failing to charge generally, without request, the law of circumstantial evidence as laid down in the Penal Code (1910), § 1010. The judge charged the jury fully and fairly upon the law of conspiracy. He instructed them, in part, as follows: "Unless there was a conspiracy, defendant can not be held for anything except for what he may have done himself, . . could not be chargeable for the act of any other party. . . If you find there was no conspiracy, or if there was a conspiracy and the defendant did not participate in the common intent and purpose to do what was done, or that what was done was not what was alleged in the indictment, then anything done by any other person would not be chargeable to the defendant in this case. . . . The burden is not only on the state to show the existence of the conspiracy between Math Cain and Elbert Cain, either with or without other parties thereto, by proving facts consistent with the hypothesis of the existence of such conspiracy, and to the exclusion of every other reasonable hypothesis save that of the existence of such conspiracy, but the burden is also on the State to prove the scope of the conspiracy, that is, what the conspiracy comprehended, and the scope of such conspiracy must be shown to have been to commit the offense as charged in the indictment."

When this case was here before this court said that while the verdict was not absolutely demanded by the evidence, "there was an abundance of evidence to authorize the verdict of voluntary manslaughter." The same is true of the present case. It will be observed that the judge applied the rule of circumstantial evidence directly and specifically to the only feature of the case depending entirely upon that sort of evidence, and that in so doing he meticulously safeguarded the rights of the defendant. The court also fully and clearly instructed the jury as to the law of reasonable doubt and the law controlling the defendant's statement. Furthermore, the court presented to the jury every possible hypothesis arising from the evidence favorable to the defendant. See *Sellers* v. *State*, 36 *Ga. App.* 653 (137 S. E. 912) ; *Reynolds* v. *State*, 23 *Ga. App.* 369 (98 S. E. 246) ; *Mangum* v. *State*, 5 *Ga. App.* 445

(2) (63 S. E. 543). Our conclusion is that the court did not commit reversible error in overruling the fourth special ground of the motion for a new trial.

Special ground 5 complains that the court erred in so frequently charging the law of "reasonable doubt," while confining his charge upon circumstantial evidence to the conspiracy. The law of reasonable doubt should be charged in every criminal case, and this, of course, includes a case depending entirely upon circumstantial evidence. *Hamilton* v. *State,* 96 *Ga.* 301 (22 S. E. 528) ; *Norman* v. *State,* 10 *Ga. App.* 802 (74 S. E. 428) ; *Thurman* v. *State,* 14 *Ga. App.* 543 (6) (81 S. E. 796). In the case at bar it was necessary for the judge to charge the law of murder, justifiable homicide, voluntary manslaughter and involuntary manslaughter. We do not conceive that it was improper for him to charge on "reasonable doubt" in connection with each of these subjects. Furthermore, it was not incumbent upon the judge to charge the law of circumstantial evidence in immediate connection with each charge upon "reasonable doubt." *Tarpe* v. *State,* 95 *Ga.* 457 (20 S. E. 217) ; *McNaughton* v. *State,* 136 *Ga.* 600 (3), 614 (71 S. E. 1038). We are of the opinion that special ground 5 discloses no reversible error.

Ground 6 complains that the court failed to give the jury the following requested charge: "In criminal law the word 'abet' means to encourage, or set another on to commit a crime. To abet another to commit a crime is to command, procure, or counsel him to do it; and presence and participation are necessary to constitute one an abettor." The charge requested is taken from *Brooks* v. *State,* 128 *Ga.* 261, 263 (57 S. E. 483, 12 L. R. A. (N. S.) 889). In that case it was stated that the trial judge erred because his charge "did not present the idea that presence and participation in the act of killing a human being was not sufficient evidence of consent and concurrence in the perpetration of the act by one who is sought to be held responsible as an aider and abetter in the killing, unless such person participated in the felonious design of the person killing." It was further stated that the case was close, and that the failure to charge as requested was error. In charging the law of voluntary manslaughter in the case at bar, the court instructed the jury that in order to convict the defendant they must believe that "the defendant on trial joined in the criminal intent."

The phrase last quoted, to our minds, conveys the same meaning as "participated in the felonious design." Hence, the reason of the holding in the *Brooks* case is not applicable to the case at bar. In the *Brooks* case the defendant was convicted of murder in the second degree, while in the case at bar the defendant was indicted for murder and convicted of voluntary manslaughter. It would appear from *Mills* v. *State,* 24 *Ga. App.* 68 (100 S. E. 32), that the failure of the judge to charge as requested could have been no more than harmless error at most. See also *Brown* v. *State,* 28 *Ga.* 200. Under the facts of the case at bar, and in the light of the court's charge upon the law controlling principals in the second degree, we hold that this ground discloses no reversible error.

Ground 7 complains that the court failed to give a requested charge to the effect that participation of the defendant in the act of killing "would not be conclusive evidence of his consent and concurrence in the perpetration of the offense charged, unless he aided and abetted the act of killing and participated in the felonious design." In view of the court's charge that the burden was upon the State to show that "the defendant on trial joined in the criminal intent," and in the light of the full and fair charge as a whole, this ground does not show reversible error.

Ground 8 is practically the same as ground 7, and shows no reason why the judgment should be reversed.

Ground 9 complains of the court's failure to give a requested charge, the gist of which is stated in this language: "Before you would be authorized to find the defendant Math Cain guilty of the offense of murder or of voluntary manslaughter it would have to appear from the evidence or from the defendant's statement that such conspiracy comprehended or included an intent, either express or implied, to kill the said L. J. Henry." In the light of the court's full and fair charge upon conspiracy and the scope thereof, this ground discloses no reversible error. Note quotation of a part of the court's charge upon the law of conspiracy in the first division of this opinion.

Ground 10 complains of the court's failure to give a requested charge to the effect that if Elbert Cain formed a separate intent to kill Henry and the defendant did not participate therein, the defendant could not be convicted of murder or voluntary manslaughter. The court's charge amply took care of the principle of law

invoked, and the court did not err in failing to give the charge requested.

Ground 11 alleges that the court erred in failing to give a requested charge to the effect that if the proved facts of the case were as consistent with innocence as with guilt, the jury should acquit the defendant. The court applied the law of circumstantial evidence to proof of the conspiracy, fully and fairly charged the law concerning the presumption of innocence, and specifically instructed the jury as follows: "Of course, if you should have a reasonable doubt of his guilt of voluntary manslaughter, it would be your duty to acquit him." Furthermore, the court applied the doctrine of reasonable doubt to each feature of the case. We do not see that any possible harm could have been done the defendant by the refusal of the judge to give the charge requested, and we hold that this ground shows no reversible error.

Ground 12 complains of the court's refusal to give a requested charge upon the law of circumstantial evidence. In the light of the fact that the judge did charge the law of circumstantial evidence in relation to the only feature of the case dependent solely upon that sort of evidence, and in the light of his full and fair charge as a whole, this ground does not disclose reversible error.

Ground 13 complains of the court's refusal to give a requested charge upon dying declarations. The requested charge covers a closely typed page of paper. A part of it is as follows: "It must be born in mind that the author of the testimony is not subject to cross-examination; that, like all human beings, he may be subject to passion and revenge; that his physical condition may have militated against a clear statement of what actually occurred; or he may have given expression rather to his opinion of what occurred than to facts actually resting in his knowledge." While the foregoing language might be appropriated for a text-book or a general discussion of the subject in the decision of an appellate court, we do not think it suitable in a charge to a jury. After an able discussion of dying declarations in the case of *Baker* v. *State,* 12 *Ga. App.* 553 (77 S. E. 884), Judge Pottle said that the judge should simply charge the jury when and under what circumstances an alleged dying declaration should be considered by the jury, and leave them free to determine what weight to give this species of evidence. The judgment in that case was reversed because the following

charge gave undue emphasis to the weight of evidence: "I charge you that the theory of the law, in admitting dying declarations as evidence, is that a person would be just as sure to make a truthful statement when he is in the article of death, when he knows that he has to leave this world, as if he was under the sanctity of an oath." The charge requested is argumentative in part, and tends to minimize the weight of the evidence. The charge was especially inappropriate in the case at bar because the deceased made two declarations, one very shortly after he received his injuries, and the other on the following day, and both were clear and practically identical. The court's charge upon dying declarations was in accord with the rule laid down in the *Baker* case, and sufficed. Of course, it is never error to refuse to give a charge which is not "a perfect statement of the law applicable to the question dealt with." *Tanner* v. *State*, 161 *Ga.* 193, 198 (130 S. E. 64). The court properly declined to give the charge requested.

Ground 14 complains of the court's failure to give a requested charge upon the law of the impeachment of witnesses which stated that if the witness testifying to Henry's dying declarations had previously made contradictory statements in regard to such declarations, "it would be your duty to disregard said testimony and refuse to consider the same, in the absence of proof of general good character of such witness,—upon proof of which the effect of such evidence would be left to be determined by the jury." The credibility of a witness is to be determined by the jury; and it is error for the court to instruct the jury that if they believe a witness has made previous statements contradictory to his testimony delivered on the trial, such testimony should be disregarded unless it "is corroborated by other credible evidence, or is corroborated by the proven circumstances in the case." *Waycaster* v. *State*, 136 *Ga.* 95 (3) (70 S. E. 883). The opinion cited concludes in these words: "Even if the jury believe that a witness has made previous statements contradictory of statements made in his testimony, the jury may believe the latter statements to be true, and this the jury is authorized to do even though such statements are not in any way corroborated." In this connection see Civil Code (1910), § 5884.

Ground 15 complains that the court failed to charge section 1024 of the Penal Code (1910). It is perfectly apparent that this code-section concerns merely the admissibility of evidence. "The

question as to whether statements claimed to be a part of the res gestæ are admissible as such is a question of law to be determined by the court; and if statements are admitted by the court as a part of the res gestæ, the weight to be given them is a matter for determination by the jury. After the evidence has been admitted it is error for the court to leave to the jury the question as to whether or not it is admissible, notwithstanding he may give in charge the proper rules by which the court should be guided in determining its admissibility." *Rouse v. State,* 135 Ga. 227 (2). The evidence was admitted without objection, and all that the jury were concerned with was its weight. "The rule that a failure to give instructions as to the credibility of witnesses, the weight to be given to testimony and the like, will not work a reversal in the absence of an appropriate written request on the subject." *So. Ry. Co. v. Brown,* 126 Ga. 7 (5) (54 S. E. 911). This assignment shows no error. Neither the general grounds nor any of the numerous special grounds of the motion for a new trial discloses reversible error. The defendant had a fair trial, the charge was as favorable to him as he could reasonably expect, and the evidence amply supports the verdict.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*