### SMITH *v.* THE STATE.

No. 10322. NOVEMBER 19, 1934.

*Charles L. Henry* and *Joe Quillian,* for plaintiff in error.

*M. J. Yeomans,* attorney-general, *Clifford Pratt,* solicitor-general, *B. D. Murphy, J. T. Goree, Abit Nix,* and *E. J. Clower,* contra.

BELL, J. Roy Smith was convicted of murder in the alleged killing of Brannon Williams, and was recommended to the mercy of the court. His motion for a new trial was overruled, and he excepted.

■ The State introduced evidence of dying declarations, and

the court charged the jury as follows: "Now on the subject of dying declarations the court gives you in charge this provision of our law: You are instructed that it is for the court, in the first instance, to determine whether the preliminary proof is sufficient to admit dying declarations; but this rule is not binding upon you, for you must be satisfied beyond a reasonable doubt that such statement was actually made by the deceased, and that he was in the article of death and conscious of his condition at the time of making such declaration. It must be made in the article of death, when he was conscious of his condition and had consciousness sufficient to know the cause of his death. The rule of the court upon that subject is: Dying declarations, made by any person in the article of death, who is conscious of his condition, as to the cause of his death, and the person who killed him, are admissible in evidence in a prosecution for homicide. The court further charges you that great caution is necessary in the admission and use of this kind of testimony. It is not necessary that the person whose statements are sought to be introduced should express himself as believing that he is in a dying condition. Consciousness of his condition may be inferred from the nature of his wound or from other circumstances of the injured. Dying declarations, when the jury is satisfied they are such, are founded on the necessity of the case, and the reason that, being made in view of impending death and judgment, when the hope of life is extinct and when the retributions of eternity are at hand, they stand on the same plane of solemnity as statements made under oath." Notwithstanding this charge, it is contended that the court erred in refusing to give the following additional instructions upon the subject of dying declarations, in accordance with a written request presented by the accused: (a) "I charge you that great caution should be observed by the jury in the use of this kind of evidence. Such evidence is liable to be very incomplete, for the reason that the deceased may be disposed to give a partial account of the occurrence although not influenced by animosity or ill will. And furthermore, the fact cannot be concealed that animosity or resentment are not unlikely to be felt by the deceased in such a situation, and the passion of anger once excited may not have been entirely extinguished even when all hope of life is extinct. Such considerations show the necessity of caution in receiving accounts given by a

person in a dying state, especially when you consider the party making the statement cannot [be] subject to the power of cross-examination." (b) "I charge you further that evidence of verbal testimony of witnesses who testify that they heard dying declarations should be received with caution by the jury, for the reason that such witnesses may have misunderstood and misquoted such dying declarations, from misunderstanding or inattention on the part of such witnesses, or from infirmity in such witnesses' memory." (c) "I charge you that when a party comes to the conclusion that he is about to die, he is in the same practical state as if called into a court of justice under the sanction of an oath. But while the sanction is the same, the opportunity for investigating the truth is very different; and therefore the accused is entitled to every allowance and benefit that he may have lost by the absence of the opportunity of more full investigation by means of cross-examination." (d) "I further charge you in reference to evidence of dying declarations that the jury should be careful in receiving such evidence, for the reasons that although such declarations may have been made in abandonment of all hope of recovery, it may happen that the violence of which the deceased has spoken may have happened under circumstances of confusion calculated to prevent their being accurately observed. The consequences, also, of violence may have occasioned an injury to the mind, and an indistinctness of memory as to the particular transaction related by the deceased. The deceased may have drawn a wrong conclusion, or he may have omitted important particulars, from not having his attention called to them. Such evidence, therefore, is liable to be very incomplete."

The court did not err in refusing to give the foregoing requested charges. All of them were argumentative, if not otherwise objectionable. The language appears to have been taken largely from decisions by this court in *Campbell* v. *State,* 11 *Ga.* 353, and *Mitchell* v. *State,* 71 *Ga.* 128. In *Josey* v. *State,* 137 *Ga.* 769 (2), 772 (74 S. E. 282), it was said: "While it is proper for this court to give its reasons in discussing the admissibility or rejection of testimony, as was done in the *Campbell* and *Mitchell* cases, it is not generally desirable for a trial judge to do so, as the jury might be misled thereby in some cases." Language used by the Supreme Court in deciding a case before it is often inappropriate for use by the trial judge in charging a jury. *Atlanta & West Point Railroad*

*Co.* v. *Hudson,* 123 *Ga.* 108 (2) (51 S. E. 29); *Georgia Railway & Electric Co.* v. *Gatlin,* 142 *Ga.* 293 (4) (82 S. E. 888). This court, in *Jefferson* v. *State,* 137 *Ga.* 382 (8) (73 S. E. 499), noted that the decision in the *Campbell* case, supra, was rendered before the adoption of the Code provision relating to admissibility of dying declarations; and further said: "It would seem that the codifiers, in prescribing the rule as to the admissibility of dying declarations in prosecutions for homicide, declaring that they are admissible only when made by a person in the article of death, when he is conscious of his condition, as well as restricting the use of such declarations to the sole purpose of showing the cause of death and the person who committed the act, defined the precautionary rule which the decisions had pronounced, which should be observed in the admission of this kind of evidence." In *Baker* v. *State,* 12 *Ga. App.* 553 (4) (77 S. E. 884), it was said that the trial judge should simply charge the jury "when and under what circumstances an alleged dying statement should be considered by the jury, and leave them free to determine what weight the statement is entitled to, if they consider it at all." See also *Cain* v. *State,* 41 *Ga. App.* 333, 339 (153 S. E. 79). Counsel for the plaintiff in error rely on the decision in *Pyle* v. *State,* 4 *Ga. App.* 811 (3) (62 S. E. 540), to support the proposition that it was error to refuse to give the requested charge designated above as (c). What was said in the *Pyle* case on the refusal of the court to give such a charge was clearly obiter, since it was finally determined that the verdict showed that the jury did not consider the evidence as to dying declarations, and thus that the refusal of the request was harmless error, the judgment in that case being actually affirmed. The decision in *Knight* v. *State,* 12 *Ga. App.* 111 (76 S. E. 1047), is subject to the same explanation. Besides, decisions of the Court of Appeals, though entitled to great respect and consideration as persuasive authority, are not binding upon this court as precedents.

■ The court charged the jury as follows: "Now if, upon consideration of the evidence in the case, you find there is conflict in the witness or the witnesses and the defendant's statement, it is your duty to reconcile this conflict, if you can, without imputing perjury to any witness, and without imputing a false statement to the defendant, if you can do so. If you cannot do that, it then

becomes your duty to believe that witness, or those witnesses you think most entitled to belief in this case." The charge was assigned as error on the ground that it restricted the right of the jury to believe the defendant's statement in preference to the sworn testimony. Since it appears that in another part of his charge the judge clearly and properly instructed the jury as to their right to believe the defendant's statement in preference to the testimony, the charge complained of, though not approved as being entirely apt and proper, does not constitute reversible error. *Sims* v. *State,* 177 *Ga.* 266 (5) (170 S. E. 58), and cit.

■ The charge as given by the court on the subject of dying declarations, and as quoted in the first division of this opinion, was assigned as error because it included the rule as to reasonable doubt, without a qualifying statement to the effect that such rule would not apply "to a dying declaration evidence of which was offered by the defendant," but that in such case it would be sufficient for the defendant to show only to the reasonable satisfaction of the jury that the deceased at the time of making the declaration was in the article of death and conscious of his condition. This exception was based on the following testimony of Dr. Ross, who was introduced as a witness by the defendant: "Mr. Ferguson and his assistants were down there, and they were fixing to put him on the stretcher to carry him to the ambulance, and Mr. Jones reached down and said, 'Brannon, who shot you?' and he didn't seem to pay any attention to him; and he said, 'Doctor see if you can get him to say who shot him,' and I shook him and shook him just before we put him on the stretcher. I kept shaking him, and in between a whisper and an audible voice he said Roy took the gun; and they took him up from there immediately and put him on the stretcher and carried him down. He never did say who shot him; he said Roy took the gun." The evidence shows, without dispute, that Dr. Ross reached the deceased when he was in a greatly weakened condition, and after he had stated several times in the presence of others that the defendant, Smith, had shot him. After the deceased had been taken to a hospital he made other declarations placing responsibility for the wound directly upon the defendant. Under the record the charge here under consideration was not cause for a new trial. It was a complete and accurate instruction, and was applicable to the evidence for the

State. "It is not a good ground of criticism upon a portion of the court's charge to say that some other principle of law involved under the facts of the case should have been given in the charge. If the court omits to charge the law applicable to the material issues of the case, that should be made a distinct ground of the motion for a new trial, in order to avail the plaintiff in error." *Green* v. *State,* 150 *Ga.* 121 (102 S. E. 813). See also *Peeples* v. *Rudulph,* 153 *Ga.* 17 (2) (111 S. E. 548), and cit. In the next place, the testimony of Dr. Ross did not show a statement by the deceased favorable to the accused, unless in the sense that it did not go so far as to charge him with the shooting. The statement that "Roy took the gun" was perfectly consistent with the other declarations shown to have been made by the deceased, and did not, when standing alone or when considered with the other evidence, tend to establish the defendant's contention that he did not kill the deceased.

■ The defendant assigned error upon the following charge: "Applying the law as given you in charge on the subject of murder to this case, if you believe beyond a reasonable doubt that the defendant, Roy Smith, in Barrow County and the State as charged in the indictment, did kill Brannon Williams, named in the indictment, in the manner charged, by the use of a weapon as charged, and that, as used at that time, was likely to kill, and you should further believe that at the time of the killing the defendant, Roy Smith, was in no danger whatever from the person killed, Brannon Williams, and that the person was not committing any assault upon him whatever, that the circumstances were not sufficient to excite the fears of a reasonable man that the deceased, Brannon Williams, either intended or endeavored or was about to commit a serious personal injury upon the person of the defendant, Roy Smith, but that the killing was without justification or mitigation, then and in that event you would be authorized to find the defendant guilty of the offense of murder." The defendant contended that he did not shoot the deceased and was not even present at the time the wound was inflicted; and, beside his statement to this effect, he introduced some evidence to support his defense of alibi. The charge last quoted was excepted to on the ground that it dealt with contentions not made by the defendant, and was inapplicable and prejudicial. Even if the charge was inapplicable, it was not harm-

ful to the accused. *Rumsey* v. *State,* 126 *Ga.* 419 (4) (55 S. E. 167); *Bryant* v. *State,* 153 *Ga.* 534 (5) (113 S. E. 4); *Carswell* v. *State,* 10 *Ga. App.* 27 (2) (72 S. E. 514). Furthermore, it appears from the record that the defendant requested an instruction upon the subject of manslaughter, both voluntary and involuntary, and also upon the theory of an accidental killing by him. These requests to charge were inconsistent with the defense of alibi; and although such requests may not have been complied with, the fact that they were presented will prevent the defendant from complaining on the ground that the charge as given involved defenses which were inconsistent with the defense of alibi. It has been held by this court that a party can not complain that the court gave a certain charge to the jury, when he himself requested that a similar instruction be given, although the request was refused. *Conant* v. *Jones,* 120 *Ga.* 568 (9) (48 S. E. 234); *Flemister* v. *Central Georgia Power Co.,* 140 *Ga.* 511 (11) (79 S. E. 148).

■ As indicated above, several witnesses testified as to statements made by the deceased, to the effect that the defendant shot him. The jury were authorized to find that these statements were made under circumstances which gave to them the character of dying declarations within the purview of the Penal Code, § 1026. The circumstances given in these statements indicated that the killing was intentional and without justification or mitigation; and the weight to be given to these statements was a matter for the jury. Moreover, there was some additional evidence, circumstantial in nature, tending to connect the accused with the offense. In *Stiles* v. *State,* 154 *Ga.* 86 (113 S. E. 208), the State relied for conviction solely upon dying declarations made by the deceased; and it was held by this court that such declarations "made out a case of murder." See also *Roberts* v. *State,* 138 *Ga.* 815 (76 S. E. 361). In the present case the question of the defendant's guilt was a matter for determination by the jury under the evidence and the statement of the accused. The evidence was sufficient to support the verdict; and no substantial error of law having been committed, the court did not err in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*