25241. WELLS *v.* THE STATE.

DECIDED JUNE 17, 1936.

*W. A. Dampier,* for plaintiff in error.

*J. A. Merritt, solicitor, W. H. White,* contra.

MacIntyre, J.  Joe B. Wells and James Howard were indicted for the offense of larceny from the house by stealing "seven and one half bushels of soy beans, of the value of $14.58, being the goods and chattels of . . Will Mathews, in the barn and storehouse of Will Mathews. . . " Joe B. Wells was tried separately and convicted.  His exception is to the judgment overruling his motion for new trial.

The gist of W. R. Layton's testimony was that he lived on W. C. Mathew's farm; that Mathew's barn was broken into on January 29, 1935, and about eight or ten bushels of beans, which some people called soy beans and others called otootan beans, were stolen therefrom; that "Mr. Mathews bought the beans from Mr. Burdette in Tennille and they were just in plain sacks;" and that the beans were of the value of $14 or $15, and were taken in Laurens County, Georgia.  James Howard testified in effect that the defendant hired him to get some "otootan or soy beans" from the defendant's smoke house and haul them to Dublin and sell them; that he hauled and sold for the defendant "a sack and a piece of beans;" that before getting the beans, witness asked the defendant if they had been stolen, and he said they had not—that "he raised some beans last year" on Dr. Claxton's farm; that the defendant "played off like he was sick" and got witness to do the selling, and that when a Mr. McMullan offered $14.58, which was half price, witness asked defendant about it and he said to accept the offer; and that McMullan gave witness a check for the beans and witness cashed the check and gave the defendant the proceeds therefrom.  Wilbur Hightower testified that he was working for James Howard and helped load the beans, which were in the defendant's smoke house; that the loading was done in the early part of the night, and the beans were taken to Howard's place and carried to Dublin next morning; and that the beans were in sacks which were sewed up and that witness did not know how many sacks there were, but knew that there were more than a sack and a half.  R. E. Braddy testified in part:  "I had a conversation with the defendant . . about these beans.  That conversation was made freely and volun-

tarily. . . He came to my house that night and woke me up at twelve o'clock. . . Joe told me that they had arrested James and James had put the officers on to him. I said: 'Joe (Joe works for me), you have fooled around here and got yourself in trouble.' I asked him how they got the beans out of the house. He said they found the door open and they went in and got them. I said: 'Well, I guess you are in it too.' He said: 'I want to talk to you about getting bond for me.' I said: 'I told you before if you got in trouble I would turn my back on you.' I told him all that I could do was to surrender him to the officers. He acknowledged freely that they took the beans out of the house. He didn't state who was with him; he just said, 'we.' Joe B. didn't farm last year. . . I worked with Mr. Mathews. . . Joe B.'s house is about seventy-five yards from the barn the beans were stolen from." The substance of the defendant's statement to the jury was that he went to Mr. Braddy's house and asked him to stand his bond, but that he never confessed to getting the beans and told Mr. Braddy that he did not know anything about them. The defendant also stated that he "did see the fellow with them in the car." J. L. Jackson, a deputy sheriff testified that he had a warrant for the defendant's arrest and searched for him diligently for a week before finding him, and that "Mr. Braddy was an overseer for Mr. Mathews on one place and Mr. Layton on another."

We have not stated the evidence fully, but are satisfied that the ownership of the property alleged to have been stolen was proved, that the jury was warranted in concluding from the evidence that soy beans were stolen as alleged, even though they were referred to by some of the witnesses as otootan beans, and that the beans stolen were the same beans which the witness Layton swore the defendant said he took. It may not be amiss to state here that the otootan bean is merely one of the numerous varieties of the soy bean, of which W. J. Morse, agronomist, says in Farmers' Bulletin No. 1520, U. S. Department of Agriculture: "The soy bean . . is a valuable annual leguminous plant, native of Southeastern Asia. . . The culture and uses of the soy bean are recorded in ancient Chinese literature and undoubtedly date from a period long before the time of written documents. The soy bean has been a crop of prime importance in China and Japan since ancient times and in extent of uses is the most valuable legume

now grown in those countries." On page 9 of the bulletin mentioned the otootan bean is described and listed among the numerous varieties of the soy bean. We hold that the evidence supports the verdict and the general grounds of the motion for new trial were properly overruled.

The first three special grounds of the motion for new trial are merely elaborations of the general grounds which have been held to be without merit. The fourth ground avers that the court erred in charging the jury as follows: "If you find there was a confession properly made and corroborated by other evidence, the degree of proof necessary to convict is that you must be satisfied of the guilt of the accused beyond a reasonable doubt. If you find there was no confession properly made, or if one, but it was not properly made, the degree of proof required of the State would be greater than a reasonable doubt, because the case, if you eliminate the alleged confession, would be one upon circumstantial testimony, and to authorize a conviction upon circumstantial testimony the proven facts and circumstances must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis, save that of the guilt of the accused of the crime charged." The ground proceeds: "The vice of this charge being that the court in substance charged the jury, that if they determined that a confession was properly made, the doctrine of circumstantial evidence would not apply. Movant contends that proof of the corpus delicti depends entirely on circumstantial evidence, and when it so depended, proof of the corpus delicti should be so conclusive as to exclude every other reasonable hypothesis, other than that a crime had been committed."

Counsel for plaintiff in error relies on the ruling in *Hester* v. *State,* 37 *Ga. App.* 518 (140 S. E. 777), where it was ruled: "The charge of the court that if the jury should determine that a confession was properly made, 'the doctrine of circumstantial evidence would not apply,' was error, because the evidence, outside of the confession, as to the corpus delicti was wholly circumstantial." It is a very different thing to instruct the jury pointedly, as was done in the *Hester* case, that "the doctrine of circumstantial evidence would not apply," and to charge them, as was done in the instant case, that "if you find there was a confession properly made and corroborated by other evidence, the degree of proof neces-

sary to convict is that you must be satisfied of the guilt of the accused beyond a reasonable doubt." "The law of reasonable doubt should be charged in every criminal case, and this, of course, includes a case depending entirely upon circumstantial evidence." *Cain* v. *State,* 41 *Ga. App.* 333, 337 (153 S. E. 79), citing *Hamilton* v. *State,* 96 *Ga.* 301 (22 S. E. 528); *Norman* v. *State,* 10 *Ga. App.* 802 (74 S. E. 428); *Thurman* v. *State,* 14 *Ga. App.* 543 (6) (81 S. E. 796). "Before there can be a lawful conviction of a crime, the corpus delicti, that is, that the crime charged has been committed by some one, must be proved beyond a reasonable doubt, or a conviction should not be had." *Shedd* v. *State,* 178 *Ga.* 653 (173 S. E. 847), citing *Lee* v. *State,* 76 *Ga.* 498, and other cases. In the instant case the court instructed the jury as follows: "Moral and reasonable certainty is all that can be attained in a legal investigation. The true question, however, in all criminal cases, is, not whether it be possible that the conclusion at which the testimony points may be false, but whether there is sufficient testimony to satisfy you that the defendant is guilty of the crime charged beyond a reasonable doubt." It will be observed that this charge is taken from the Code of 1933, §§ 38-105, 38-110. We hold that the judge did not commit reversible error for any reason assigned in the ground.

We are satisfied that the jury was warranted in concluding from the testimony of the witness Braddy that the defendant did confess, and hold that there is no merit in the last ground complaining that the court erred in charging on the law of confessions for the reason that "there was no confession made."

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*