34021. HAGIN *v.* THE STATE.

DECIDED MAY 6, 1952.

*Kopp & Peavy, E. O. Blalock,* for plaintiff in error.
*J. R. Walker, Solicitor-General,* contra.

GARDNER, P. J. ■ The defendant assigns error, in the first special ground of his motion for a new trial, on the failure of the court, without request, to charge the jury as follows: "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act which might produce such a consequence, in an unlawful manner; provided that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder." "If you should find the defendant guilty of involuntary manslaughter you should fix the maximum and minimum penalty which should be not less than one year nor more than three years in the penitentiary."

The defendant contends that the court should have charged the jury in substance as above set out, and that such instruction was demanded under the evidence. There was evidence from which the jury could have found: that the deceased, on the date of the homicide, was drinking; that there was bad feeling between the defendant and the deceased, who were related, and there was some trouble between them on the Saturday previous to the homicide, which was on Sunday; that the deceased was in an automobile with his sister and some other relatives, when they passed the home of an uncle, and the deceased saw the defendant sitting on the porch, and said, "There is that son of a bitch, I will get him now"; that he stopped the car and backed up and got out and went to the porch of the house where the defendant was and said, "You Hagin looking son of a bitch I have come to get you"; that the defendant said, "Joel, do not start no trouble," and others tried to prevent any trouble; that the deceased was drunk and continued cursing, and he grabbed hold of the defendant and they fell out into the yard; that both were fighting; and that the defendant cut the deceased and he died. There was evidence that the deceased provoked the trouble, that the defendant fought to protect himself, that he did not curse the deceased but sought to prevent trouble, and that, at the time the deceased was cut, the defendant was on the ground,

where the deceased had knocked him, and the deceased was straddle of him.

"There being evidence from which the jury would have been authorized to find the accused guilty of involuntary manslaughter in the commission of a lawful act without due caution and circumspection, it was error for the judge to omit to instruct the jury on the law relating to that grade of manslaughter." *Jackson* v. *State,* 181 *Ga.* 753(2) (184 S. E. 279); *Lee* v. *State,* 70 *Ga. App.* 61 (27 S. E. 2d, 347). It is true that there can be no involuntary manslaughter where the intention is to kill. If there is any evidence to raise a doubt, even though slight, as to the intention to kill, the court should give in charge the law of involuntary manslaughter, but if there is nothing to raise such a doubt, the failure to charge on that subject will not require a new trial. *Jackson* v. *State,* 76 *Ga.* 473(3a). In that case the court said: "Indeed, where there is evidence sufficient to raise a doubt, however slight, upon the point, whether the crime be murder or manslaughter, voluntary or involuntary, the court should instruct the jury upon these grades of manslaughter as well as murder." *Jackson* v. *State,* supra, p. 478, citing and following *Wayne* v. *State,* 56 *Ga.* 113. The jury would have been authorized to find that the defendant had no intention of killing the deceased. One of the witnesses, who saw the homicide, testified: "The defendant was still sitting in the swing and made no move to get up until after the deceased hit him, and he went to get up and the deceased hit him again, and he fell in the yard and the deceased jumped out astraddle of him. The defendant landed on his back in the yard. I did not see the defendant do a thing to cause the deceased to jump on him. He never uttered a curse word and never said a word the whole time the boy was hitting him, only begging him not to come in. After it was over the defendant was crying and said he wouldn't have had it happen for anything in the world. He said he hated it, that he didn't even know the boy was mad at him, and that if he had known they were coming back he would have left to keep from having any trouble."

"There are numerous decisions to the effect that, where there is the slightest doubt as to whether any phase of manslaughter, either voluntary or involuntary is involved, the court should

submit these principles of law to the jury." *Ridley* v. *State,* 81 *Ga. App.* 737 (3) (60 S. E. 2d, 249). In *Warnack* v. *State,* 3 *Ga. App.* 590(2) (60 S. E. 288), this court said: "Where the evidence and the statement, taken together or separately, raise a doubt, although slight, as to the intention to kill, the law of involuntary manslaughter should be given in charge. And where the act from which death results may or may not be lawful under the facts, both grades of the law of involuntary manslaughter should be given in charge". To the same effect see *Wager* v. *State,* 74 *Ga. App.* 729 (41 S. E. 2d, 342). The fact that a knife was used by the defendant does not show, as a matter of law, that the defendant intended to kill the deceased. In *Cain* v. *State,* 39 *Ga. App.* 128 (146 S. E. 340), it is held: "But a deadly weapon may be used in such a manner as not necessarily to raise such a presumption [of intent to kill] but to leave the intent as a question of fact for the jury."

Under the facts in the record before this court, the trial judge erred in failing to charge the law on involuntary manslaughter, as set out in special ground 1.

■ Evidence to the effect that the defendant had given to his wife a venereal disease was improper and should not have been allowed, when objected to by the defendant. Error is assigned on such testimony in the second special ground. To permit such evidence to be admitted over objection was highly improper, and the same should have been excluded.

■ As this case is reversed because of the failure of the court to charge on involuntary manslaughter and because of the improper evidence as to the defendant having a venereal disease which he communicated to his wife—which evidence could illustrate nothing concerning the defendant's guilt or innocence except to blacken his character—this court does not pass upon the evidence, except to hold that a verdict of guilty, as a matter of law, was not demanded.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*